WILLIAM E. POWERS, *Atty. Gen. vs.* GEORGE HARVEY *et al.*

WILLIAM E. POWERS, *Atty. Gen. vs.* GEORGE HARVEY *et al.*

MARCH 19, 1954.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

BAKER, J.   These two bills in equity were brought by the

attorney general of this state in his representative capacity against the tax collector and tax assessors of the town of South Kingstown and against the tax collector of the Kingstown Fire District to enjoin the collection of certain taxes. The cases were heard together in the superior court where final decrees were entered granting the prayers of both bills. From those decrees the respondents have duly prosecuted their appeals to this court.

In general the bills allege that the taxing authorities of such town and the tax collector of said fire district sought to collect from a number of college fraternities and sororities, which occupied houses located on the campus of Rhode Island State College, now the University of Rhode Island, taxes assessed upon such buildings for the years 1949 and 1950. It is further alleged, among other things, that the buildings are inseparable from the land upon which they stand; that as real estate they belong to the state; that the property is not subject to taxation by the town and fire district; and that the taxes assessed for those years are wholly void. The complainant prays that the respondents be enjoined from further proceedings in relation to the collection of such taxes and that whatever action has already been taken in that connection be vacated.

It appears that the tax for the year 1949 upon the houses in question was carried on the assessment rolls of the town under a listing of "buildings and improvements." Thereafter an attempt was made by the assessors, on the ground of an alleged error, to amend the rolls for 1949 by describing the houses as "tangible personal property." In 1950, however, they were carried on the rolls for that year under the specific designation of tangible personal property.

The respondents admit that property belonging to the state is exempt from taxation by statute, general laws 1938, chapter 29, §2. It also appears that the legislature by public laws 1939, chap. 688, sec. 3, created a board of trustees as a public corporation and invested it with legal title, in trust

for the state, to all property, real and personal, publicly owned for the use of Rhode Island State College. It is not disputed, therefore, that the land upon which the buildings in question stand belongs to the state and thus is within the above exemption. Moreover chap. 29, §2, sets out among others the following described exemptions: "buildings for free public schools * * * so far as said buildings and land are occupied and used exclusively for * * * educational purposes; the buildings and personal estate owned by any corporation used for a school, academy or seminary of learning * * * so far as the same is used exclusively for educational purposes * * *." It is settled in this state that exemptions of the above nature are strictly construed in favor of the taxing authority. *Sisterhood of the Holy Nativity* v. *Tax Assessors,* 73 R. I. 445. In our judgment under the facts herein the above exemptions do not apply in this cause.

The evidence shows that the taxed houses are substantial buildings with permanent foundations and basements; that they are affixed to the real estate upon which they are located; and that they are not readily separable therefrom. They are also connected to water, electric supply, and sewage disposal systems. In usual circumstances such buildings would be considered as part of the realty, being firmly attached thereto and apparently passing with it. *McHale* v. *Rosenblatt,* 56 R. I. 120; *Houle* v. *Guilbeault,* 70 R. I. 421. It is argued by complainant that they also were intended to be used and enjoyed for college purposes in connection with the land and therefore that they belong to the state.

In the circumstances the cause which we are considering is not an ordinary one but presents several difficult questions respecting the nature and title of the property involved. It appears from the evidence that in 1912, by resolution and later by statute, a policy respecting the operation of Rhode Island State College was adopted. Thereunder fraternities and sororities were encouraged to erect structures which

were to be used in part as dormitories for housing students belonging respectively to the particular society concerned. At the time of the hearing about five hundred students were so accommodated and apparently no dormitories were built by the state until many years later. Beginning in 1912 and continuing through the early nineteen thirties the houses involved in this proceeding were erected. They were planned with the approval of the college authorities, were constructed and paid for by the respective fraternity or sorority in accordance with financial arrangements set up by statute, and were operated under certain rules and regulations established by the college.

In G. L. 1938, chap. 188, §§9-12, the financial arrangements above mentioned are set out. Two of these sections read as follows:

"§ 9. The board of regents is hereby authorized and empowered on behalf of the Rhode Island State College to acquire land and also to guarantee in the name of the state approved loans made to societies of students at said college, for the purchase or construction, upon lands owned by said college, of society houses which shall serve as student dormitories. Any loans so approved, upon default, shall become state obligations in like manner as any state bond."

"§ 12. Whenever default is made on the part of a society in the payment of loans guaranteed under the provisions of § 9, or any part of them, the said board of regents is hereby authorized to assume such obligation and to make required payments on principal and interest from any of the appropriations available for the Rhode Island State College. In the event of a default, in such cases where the board of regents assumes the obligation of a society, the state shall have a lien subject to any mortgages or encumbrances existing at the time on any and all property of the society. Said lien may be released after the reimbursement to the state of all payments made on behalf of the society, plus accrued interest."

Apparently the broad intent of the above sections was to

provide assistance to students' societies for the erection of houses upon land owned by the college to serve as dormitories by authorizing the college to guarantee in the name of the state approved loans made by these societies in order to build such houses. A benefit generally was thus derived by the college and the societies. It is of interest to note that in the event of default by a society in making necessary payments on such a loan and the assumption by the college authorities of the obligation, the state is given a lien on any and all property of the society. If this applies to the houses involved here, it is argued with some force that they must have been considered by the parties as belonging to the societies, since it would not be necessary or reasonable to give the state a lien on property already owned by it.

Moreover each fraternity or sorority, when it undertook to build and operate such a house on the campus, entered into a written agreement with the proper officers of the college. Such agreements were similar in all substantial respects and differed, if at all, only as to minor matters. The following portions of one of such agreements show their nature and purpose and set out the understanding of the parties in regard to their respective duties and interest in such houses.

"This agreement entered into * * * between the Board of Managers of Rhode Island State College, party of the first part, and * * * fraternity, an incorporated student organization, party of the second part, witnesses that for and in consideration of certain advantages to accrue to the party of the first part in increased capacity for housing students, etc., and in further consideration of the sum of one dollar from the party of the second part, receipt of which is hereby acknowledged, the party of the first part does hereby covenant and agree to permit the party of the second part to construct upon a part of the grounds of the college, said part to be designated by the party of the first part, a house to be continuously and exclusively

used as a fraternity house for lodging students of this college and no other, members of said fraternity, under the following stipulations:

1. The said house, when fully paid for by the fraternity, shall be and indefinitely remain the property of the said fraternity; provided that, at any time, whenever, in the judgment of said Board of Managers, it shall be for the best interests of the said college to acquire exclusive possession of the said house, the said Board of Managers may acquire exclusive possession by purchasing at a price to be agreed upon, or, in case of non-agreement between the two parties aforesaid, to be determined by arbitration.

2. For the purpose of building said house, the Board of Managers of the said college, by virtue of an act of the State Legislature dated April 25, 1912, does hereby agree and covenant to endorse notes of the * * * fraternity to the amount of * * * provided, that the amounts obtained on said notes shall be deposited with the registrar of the college, and shall be paid out on the order of the proper official of the fraternity approved by the President or registrar of the college, and provided further that, to meet the expenses of the house maintenance and the interest on notes, and to create a sinking fund to pay off the notes themselves, the fraternity shall pay into the college office not less than * * * per year, until all debts on the house are paid, the same to be applied to the purposes before stated by orders from the proper official of the fraternity approved by the President of the College.

3. On failure of the fraternity aforesaid to keep up the dues provided in section two, the college shall assume the financing and disposal of the house; and on extinguishment by the college of the debt then due, the house shall become the property of the college, such part of the amounts, paid on the debt by the fraternity being returned to the fraternity by the college as may be fixed by agreement or by arbitration.

4. If, in accordance with section two, the fraternity shall extinguish the full debt, and shall thus obtain ownership of the house, as provided in section one, the funds for financing house expenses shall be provided

for by fees paid at the college office in amount necessary to meet the said expenses of house maintenance, said fees to be paid out in the same manner as provided in section two.

5. * * * Any variation from the plans in the construction of the house, unless approved in writing by the Board, shall constitute a forfeiture of this agreement, and the property as far as completed shall pass into the possession of the college."

"7. As a gratuitous aid to the fraternity in paying for its house, the college agrees to furnish free of charge, light, water, and if possible from the central plant, heat, until in accordance with section two, the house is paid for by the fraternity, provided, that the fraternity shall exercise all diligence, when requested, to minimize the amount of each used and to prevent waste."

In *Cohen* v. *General Motors Acceptance Corp.*, 51 R. I. 153, it was held that the character of property as real or personal may be fixed by contract with the owner of the real estate when the article is installed. While that case involved a refrigerating system, we are of the opinion that the general rule is applicable here where there is an express agreement between the parties which places the ownership of the houses in the societies when certain conditions are fulfilled. In *Kinkead* v. *United States*, 150 U. S. 483, 491, it is stated: "It is true there is abundant authority for holding that buildings may by agreement of parties be erected upon land without becoming affixed thereto, and that neither the mode of annexation nor the use thereof is conclusive as to the intention of the parties, although the presumption is that the building so erected becomes a part of the freehold."

Upon consideration of all the evidence and the law applicable thereto, it is our opinion that each of these houses which was fully paid for in 1949 was the property of the society which had thus paid for it, and that for tax purposes it could properly be considered tangible personal prop-

erty, even assuming that by virtue of the contract such society could not sell, mortgage, or remove its house without the consent of the college.

It appears in evidence that until 1949 no attempt was made to tax the houses. The complainant argues that such a long-continued practice should be given weight in the decision of this cause, citing *Woonsocket Hospital* v. *Quinn*, 54 R. I. 424, which involved the construction of the charter of a hospital. We do not consider that case controlling here. In 2 Cooley Taxation (4th ed.) §651, p. 1370, Note, it is stated: "No right to exemption can be claimed merely because of a failure to tax for a period of years." See also *Providence Athenaeum* v. *Tripp*, 9 R. I. 559.

In addition complainant contends that the houses are not taxable because they are used by the state in performing the governmental function of conducting an educational institution under article XII, section 1, of the constitution of this state. Granting that the houses are used as dormitories for student members of certain societies attending the college, we are nevertheless of the opinion that in the circumstances the houses are not being used exclusively to perform a governmental function so as to come within the general rule of law referred to by complainant and that his contention on this point is not sound. He relies chiefly on certain general language appearing in *City of Providence* v. *Hall*, 49 R. I. 230, 236, where a tax levied by the town of Scituate upon realty comprising the water supply system of the city of Providence was upheld.

In that opinion the following language appears: "Before considering our statutes it may be well to note a distinction between nontaxable and exempt property. Exemption presupposes a liability to taxation. * * * Property of the State or that of the city used in performing delegated governmental functions is free from subjection to tax not because of an exempting statute but by reason of its use in performing duties delegated to the municipality by the sovereign.

A municipal corporation however may own and use property like a school building or fire station to carry on a function of the sovereign state or it may own and use property like a reservoir or power house in its proprietary capacity and sell the product to its people and others. In the latter 'character it is a mere legal entity or juristic person.' * * * Nothing inherent in the nature of property held in the latter way makes it nontaxable. The property being of a taxable nature liability is presupposed and nonliability, if existent, is because of exemption within the strict meaning of the term. Exemption is created by statute or is implied because some reason of public policy makes it imperative. In the case now before us it is admitted that there is no express statutory exemption and we are asked to find an implied exemption."

In our judgment the above case is clearly distinguishable on its facts from the one at bar. Here, as previously mentioned, we have a statute which provides that property of the state is exempt from taxation. G. L. 1938, chap. 29, §2. Apparently the complainant assumes that the houses in question are entirely state property. However, we have determined that those houses which were fully paid for are not state property but are tangible personal property belonging to the particular societies which have paid for them. In the present instance we perceive no imperative reason of public policy which requires us to find by inference an exemption from taxation for such houses. In 51 Am. Jur., Taxation, §561, p. 553, the following statement is made regarding exemptions: "Such exemptions do not, however, extend to property which belongs to a private corporation, even though used for strictly public purposes." Under the same authority in §619, p. 596, it is stated: "Ordinarily, property occupied by an educational institution is not exempt unless it is owned by the institution." See id., §624, p. 600, and *Inhabitants of Orono* v. *Sigma Alpha Epsilon Society*, 105 Me. 214.

General laws 1938, chap. 29, §1, provides among other

things that all personal property belonging to the inhabitants of this state, whether individuals, copartnerships, or corporations, shall be liable to taxation unless otherwise specially provided. See also chap. 30, §9. In G. L. 1938, chap. 31, §1, it is stated that the qualified electors of a town when legally assembled "may levy a tax for the purposes authorized by law, on the ratable property of the town * * * ."

In view of the conclusions heretofore reached, it is our opinion that the houses in question which were fully paid for in 1949 and 1950 were ratable property in the town of South Kingstown; that they were subject to taxation as tangible personal property of the societies; and that they were also liable for the tax of the Kingstown fire district. However, it is our opinion that the assessment made by the town in 1949 on the houses as buildings and improvements was void because they were assessed as part of the realty which was exempt, and further that the subsequent attempt of the assessors, under the provisions of G. L. 1938, chap. 31, §24, to correct that assessment was of no effect. In the circumstances that statute did not apply to such attempted reassessment.

The trial justice, therefore, was correct in enjoining the respondent tax collector of South Kingstown from proceeding to collect the town tax assessed against the houses in question in 1949, in view of its invalidity. But he was in error in enjoining the collection of the town tax assessed against such property for the year 1950 and the collection of the fire district taxes for both of the above-mentioned years.

The respondents' appeal in each case is sustained, the decree therein appealed from is modified as above set forth, and on March 29, 1954 the parties may present to this court for approval forms of decrees, in accordance with this opinion, for entry in the superior court.

*William E. Powers,* Atty. Gen., *Archie Smith,* Assistant Atty. Gen., for complainant.

*William H. Leslie, Jr.,* Town Solicitor, *Thomas H. Gardiner,* Special Counsel, for respondents.