STATE OF VERMONT
SUPERIOR COURT - ENVIRONMENTAL DIVISION

}

In re Gould Accessory Building       }     Docket No. 14-1-12 Vtec
 Permit (After Remand)         }

}

## Decision on the Merits

Donald and Julie Gould (Applicants) appeal a decision by the Town of Monkton Development Review Board (the DRB)[1] denying their application for a building permit to construct an accessory dwelling on property they own in the Town of Monkton, Vermont (the Town).  The Gould's property has an address of 148 Piney Woods Road (the Property).

The Court conducted a site visit to the Property on June 19, 2012, immediately followed by a single day merits hearing at the Superior Court, Addison Civil Division's courthouse in Middlebury, Vermont. Appearing at the site visit and trial were Donald and Julie Gould, appearing pro se, and David Rath, Esq., Attorney for Appellee Town of Monkton.

Based upon the evidence presented at trial, including that which was put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

## Findings of Fact

1. The Property, also referred to as Lot 8, is located at 148 Piney Woods Road, Monkton, Vermont and is approximately 11.4 acres in size.

2. The Goulds seek a building permit for a single story accessory dwelling to be located on the Property where they have an existing 3 bedroom single-family home (Gould residence).

3. The accessory dwelling is proposed to be a prefabricated structure with exterior dimensions as follows: 14 feet high, 10 feet wide, and 50 feet long.  The Goulds also propose to attach a 12 foot by 12 foot addition and an 8 foot by 12 foot deck to the prefabricated structure.

4. The total exterior size of the proposed accessory dwelling, excluding the deck, is 644 square feet.

5. The proposed accessory dwelling will have one bedroom and one bathroom.

6. In addition to the Gould residence, the Property also has several additional buildings including a barn, sheds, and a workshop.

---

[1] This matter was before the DRB after a remand order issued by this Court.  See In re Gould Accessory Dwelling Application, No. 33-3-11 Vtec (Vt. Super. Ct. Envtl. Div. Aug. 23, 2011).

7.  The Goulds also own the adjoining lot to the east of the subject property (Lot 7).  This lot contains a 3-bedroom duplex (Lot 7 duplex), which the Goulds rent to tenants.

8.  The proposed accessory dwelling is to be located in the southeast corner of the Gould's Lot 8, set back 75 feet from Piney Woods Road and 50 feet from the common boundary with Lot 7.

9.  The proposed accessory dwelling will have an independent curb cut and driveway off of Piney Woods Road, and an independent parking area.  The driveway and parking area are proposed to be located to the east of the accessory dwelling close to the common boundary with Lot 7.

10. According to the Goulds' Application for a Building Permit for the accessory dwelling, in evidence as the Town's trial Exhibit C, the proposed accessory dwelling was to be served by an existing well drilled upon Lot 8, which is presently supplying water to the Lot 7 duplex. During the trial, however, Mr. Gould testified that the Goulds had no specific plan for the water supply for the proposed accessory dwelling; the supply may be via a new well or the supply may be shared with one of two wells already existing on Lot 8.

11. One existing well located on Lot 8 supplies water to the Gould residence as well as to the dwelling on Lot 6 located immediately adjacent to the west side of Lot 8.  The second existing well located on Lot 8 supplies water to the Lot 7 duplex.

12. The Goulds have not yet proposed specific plans for the accessory dwelling's electric supply.

13. The Gould residence is benefited by a Wastewater System and Potable Water Supply Permit WW-9-1311-1.  This '-1' permit amends a previous permit (WW-9-1311).  Permit WW-9-1311 had authorized the current configuration of the property, with a three-bedroom duplex on 1.3 acres delineated as Lot 7 and the Gould residence on 11.45 acres delineated as Lot 8.At present the Goulds have not applied for, and thus have not obtained, any permitting or approval for the handling and treatment of wastewater from the proposed accessory structure.  The Goulds propose that the new accessory dwelling will share the septic system currently servicing the Gould residence.  The Goulds intend to seek an amendment to the Wastewater System and Potable Water Supply Permit WW-9-1311-1 whereby their existing single-family dwelling approval for the 3-bedroom Gould residence will be reduced to an approval for a 2-bedroom residence, and the extra capacity for the third bedroom will be transferred to the new accessory dwelling.

14. The proposed accessory dwelling would be located approximately 160 feet from the Gould residence and 100 feet from the Lot 7 duplex.

15. The distance between the existing driveway at the Gould residence and the proposed driveway which will serve the accessory dwelling is approximately 264 feet.

16. The area of the Town within which the Property is located is rural in nature with dispersed development.

17. The second floor of the Gould residence has knee walls on two sides of the structure which are approximately 34.5 inches high. These knee walls extend from the floor to the sloped ceiling.

18. The total habitable floor area of the Gould residence is as follows:

    a.   First Floor (including the mud room): 1,061 square feet;

    b.   Second Floor (calculated as area between the knee walls): 878 square feet

    c.   Total area: 1,939 square feet.

19. Thirty percent of the total habitable floor area of the residence is 581.70 square feet.

## Conclusions of Law

The legal questions presented in this appeal as to whether Applicants' proposed accessory dwelling complies with 24 V.S.A. § 4412(1)(E) and with the Town of Monkton Zoning Regulations § 320(5) fall into three categories: 1) whether the accessory dwelling use is subordinate to that of the principal dwelling (the Gould residence), 2) whether the proposed accessory dwelling exceeds 30 percent of the total habitable floor area of the principal single-family dwelling (the Gould residence), and 3) whether the Property has sufficient wastewater capacity. Applicants also raise other issues relating to alleged procedural errors and constitutional protections. We first review whether Applicant's proposed accessory dwelling complies with 24 V.S.A. § 4412(1)(E).

I.      **Accessory Dwelling Subordinate to Principal Dwelling**

Title 24, Section 4412(1)(E) of the Vermont Statutes Annotated provides, in pertinent part, that

> "[n]o bylaw shall have the effect of excluding as a permitted use one accessory dwelling unit that is located within or appurtenant to an owner-occupied single-family dwelling. An accessory dwelling unit means an efficiency or one-bedroom apartment that is <u>clearly subordinate</u> to a single-family dwelling . . . ."

24 V.S.A. § 4412(1)(E) (emphasis added). The Town of Monkton Zoning Regulations (Regulations) define "accessory use or building" as "a use or building customarily incidental and subordinate to the principal use [or] building and located on the same lot." Regulations § 130. The Vermont Supreme Court has previously interpreted "subordinate" to mean "holding a lower rank,

class, or position." In re J.D. Associates, No. 2003-294, slip op. at 2 (Vt. 2004) (unpublished mem.) (quoting Black's Law Dictionary 1439, 1540 (7th ed. 1999)); see also E.C. Yokley, Zoning Law & Practice 8-2 (4th ed. 2001) ("'Incidental and subordinate' means a use that is minor in relation to the permitted use and bears a reasonable relationship to it.").

As discussed within our June 7, 2012 entry order denying the Town's motion for summary judgment, Section 2730(b)(4) of the 2006 Vermont Fire and Building Safety Code lists mere examples of factors that may indicate that an accessory dwelling is subordinate to a single-family dwelling. In re Gould Accessory Building Permit (After Remand), No. 14-1-12 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. June 7, 2012) (Walsh, J.); see also In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262 (stating that when interpreting zoning ordinances and statutes, courts will "construe words according to their plain and ordinary meaning"). The listed examples include a common driveway, shared water and wastewater systems, and a common electrical service entrance. Vermont Fire & Building Safety Code § 2730(b)(4). There is nothing to indicate that the list of factors is comprehensive, or that an accessory dwelling must possess each of these features to be considered subordinate to the principal dwelling.

The Town argues that the proposed accessory dwelling and driveway serving the accessory dwelling are not subordinate to the Gould residence because the accessory dwelling and its driveway are closer in proximity to the Lot 7 duplex than to the Gould residence.

We conclude that the proposed accessory dwelling is subordinate to the Gould residence for the following reasons. Both dwellings are located on the same lot and will have residential use. The existing Gould residence presently has 3 bedrooms, and under the Goulds' plan of development this dwelling will be renovated to have 2 bedrooms while the accessory dwelling will have 1 bedroom. Furthermore, the square footage of the proposed accessory structure is much smaller than the Gould residence. As such, the proposed accessory dwelling use is minor as compared to the use of the Gould residence. The proposal indicates that the two dwellings would share the existing wastewater system. Although the Goulds propose a separate driveway for the accessory dwelling, nothing in the Town's regulations prohibit two access driveways for the two structures. It remains unclear whether the Gould residence and the proposed accessory dwelling will share electric service or a water supply well. Even if the accessory dwelling were to have independent electric service and water supply, however, this would not change our overall conclusion that the proposed accessory dwelling is subordinate to the Gould residence.

The proposed accessory dwelling is approximately 160 feet from the Gould residence and approximately 100 feet from the Lot 7 duplex. Absent limitations expressly stated in the Town's bylaws, however, the distances separating the Gould residence, the proposed accessory structure, and the Lot 7 duplex do not alter our conclusion that the proposed use is subordinate to the Gould residence. Similarly, and again absent limitations expressly stated in bylaws, the 264-foot distance between the existing driveway at the Gould residence and the proposed driveway which will serve the accessory dwelling does not negate our conclusion of subordinate use. While it is possible to conceive of a distance between a principal and an accessory structure so large that the accessory structure could not be considered subordinate, the Goulds' proposal has not reached this magnitude. The question of whether a proposed subordinate use sits physically too far from its related principal use depends, in part, upon the nature of the area involved. In the case before the Court, the area of the Town in which the property is located is rural in nature with dispersed development. Within this context, we do not regard 160 feet as so distant as to disqualify the proposed structure as "accessory," even though a different structure happens to be closer in proximity.

## II.   Habitable Area

The maximum size of the proposed accessory dwelling in this appeal is controlled by 24 V.S.A. § 4412, which provides, in relevant part, that no town's zoning bylaws may prohibit an accessory dwelling as a permitted use if the accessory dwelling unit does not exceed 30 percent of the total habitable floor area of the single-family dwelling. 24 V.S.A. § 4412(1)(E)(ii). In analyzing the maximum size allowed, we first must determine the "total habitable floor area" of the Gould residence.

The total habitable floor area of the Gould residence is 1,939 square feet. We reach this conclusion by considering the measurements undertaken by the parties. The Town's Regulations do not define "habitable floor area" or explain how to measure for this area. The parties agree that habitable floor area is calculated by measuring the area inside of a dwelling in which people live. Both parties provided measurements from the interior side of the exterior walls of one side of the dwelling to the interior side of the exterior walls of other side of the dwelling. The parties also agree that areas such as basements, garage spaces, and attic spaces are not included in habitable area.

The parties disagree on how to account for stairways and areas under sloped ceilings. The Town suggests that stairways connecting a first floor to the second floor should only be included

in the area calculation for one of the floors. We disagree with this exacting approach as it could lead to absurd results. If the Town's rationale were extended to other structural characteristics, then a calculation of habitable floor area may have to be reduced by the area occupied by interior dividing walls and the like. Such an approach would be difficult and unnecessary absent an express regulatory provision clearly requiring such a detailed effort. The Town also argued that for the second floor of the Gould residence where the pitch of the roof causes the ceiling to slope, the limits of habitable area reaches to imaginary walls which are four feet tall when extended from the floor to the ceiling. In the Gould residence's second floor, the knee walls extending from the floor to the ceiling are approximately 34.2 inches high. The floor area interior to these walls is usable living space, and therefore, we include the area up to the interior side of the knee walls as habitable floor area. Therefore, we determine habitable floor area to be the square footage measured between the interior sides of exterior walls or the interior sides of the knee walls in areas with sloped ceilings.

Based upon these principles, the Town measured the first floor of the Gould residence to be approximately 445 inches by 303 inches, exclusive of the mud room, equating to approximately 938 square feet. The Goulds measured the first floor, exclusive of the mud room, to be 445 inches by 301 inches, equating to approximately 931 square feet. The Town calculated the mud room area to be approximately 66 square feet; however, the Town did not include a stairway. The Goulds calculated the area of the mud room, including the stairway, to be 130 square feet. Thus, we find that the square footage of the habitable area of the Gould residence's first floor (including the mud room and including the stairways) to be approximately 1,061 square feet.

The Town measured the second floor of the Gould residence to be approximately 445 inches by 260 inches using an imaginary 4-foot high wall in the area of the sloped ceiling, equating to approximately 805 square feet. The Goulds measured the second floor, including the area behind knee walls, to be 445 inches by 301 inches equating to approximately 931 square feet. We conclude that the area behind the knee wall is not habitable area; however, we conclude that the area up to the existing 34.2 inch high knee walls is habitable. Thus, we find the square footage of the habitable area of the Gould residence's second floor to be approximately 878 square feet. We do not subtract stairways from either floor, and therefore, we find a total habitable floor area of 1,939 square feet. Thirty percent of the total habitable floor area of the Gould residence is therefore 581.70 square feet.

Next we must determine how to calculate the size of the proposed accessory dwelling. The Goulds assert that the <u>habitable area of the accessory dwelling</u> may not exceed 30 percent of the habitable area of the primary dwelling. The Town asserts that the square footage of the accessory dwelling <u>as measured by its exterior walls</u> may not exceed 30 percent of the habitable area of the primary dwelling.

The dispute arises regarding the interpretation of the following condition for accessory dwellings: "The unit does not exceed 30 percent of the total habitable floor area of the single-family dwelling." 24 V.S.A. § 4412(1)(E)(ii). In interpreting statutory provisions such as this one, we are directed to give effect to the intent of the Vermont Legislature. <u>Town of Killington v. State</u>, 172 Vt. 182, 188 (2001). To do this we refer to the common and ordinary meaning of the statute's plain language, taking into account the statute as a whole. <u>Delta Psi Fraternity v. City of Burlington</u>, 2008 VT 129, ¶ 7, 185 Vt. 120. We accept this interpretation unless doing so would make a provision ineffective or create irrational results. <u>Town of Killington</u>, 172 Vt. at 188.

The parties dispute whether the word "unit" refers only to the habitable floor-area or the square footage of the building as measures by the building's exterior walls. We note that 24 V.S.A. § 4412(1)(E)(ii) contains one general reference and one specific reference. The general reference is to the accessory dwelling "unit" and the specific reference is to the "habitable floor-area" of the primary dwelling. To give effect to the intent of this statutory provision, the general term "unit" should be interpreted to refer to the specific measurement of "habitable floor-area." Thus, the statute would read: "the [habitable floor-area of the] unit may not exceed 30 percent of the total habitable floor area of the single-family dwelling." We also reach this interpretation because the term "unit" encompasses accessory dwellings wholly separate from primary dwellings and accessory dwellings wholly within existing primary dwellings, and therefore, we must consider the feasibility of applying the statute to both scenarios. Because there is no way to measure the external footprint of an accessory dwellings wholly located within the interior portion of a larger house, we conclude that the statute limits the habitable area of accessory dwelling units.

In further support of this interpretation is the principle that zoning regulations are in derogation of private property rights, and therefore, property owners are entitled to all property rights that are not expressly prohibited by statute or regulation. <u>Appeal of Weeks</u>, 167 Vt. 551, 555 (1998) (internal citations omitted*)*. Thus, we adopt the more permissive interpretation of 24 V.S.A. § 4412. We conclude that 24 V.S.A. § 4412 restricts the size of the "habitable floor-area" of accessory dwellings.

The Goulds' proposed accessory structure may therefore have a maximum habitable floor-area of 581.70 square feet, which represents 30 percent of the habitable floor area of the Gould residence. The accessory structure proposed in the application has an area as measured by its exterior walls of 644 square feet. Mr. Gould testified that by necessity the interior habitable floor area must be less than 644 square feet, a statement with which we generally agree. Mr. Gould testified further that the accessory dwelling unit would have a habitable floor area of less than 598 square feet. Other than this conclusory statement, the Goulds provided no additional evidence of the habitable floor area of the proposed accessory dwelling.

Thus, while we conclude that the proposed accessory dwelling may have up to 581.70 square feet of habitable floor area, we are without evidence specifying the total habitable floor area of the Goulds' proposed accessory dwelling.

## III.    Sufficient Wastewater Capacity

Title 24, Section 4412(1)(E)(i) of the Vermont Statutes Annotated requires as a condition of permitting an accessory dwelling that the Property have sufficient wastewater capacity. 24 V.S.A. § 4412(1)(E)(i). At present the Goulds have not applied for, and thus have not obtained, any permitting or approval for the handling and treatment of wastewater from the proposed accessory structure. The Goulds propose that the new accessory dwelling will share the septic system currently servicing the Gould residence, which operates under Wastewater System and Potable Water Supply Permit WW-9-1311-1. This '-1' permit amends a previous permit (WW-9-1311). Permit WW-9-1311 had authorized the current configuration of the property, with a three-bedroom duplex on 1.3 acres delineated as Lot 7 and the Gould residence on 11.45 acres delineated as Lot 8. The current approved and permitted wastewater disposal capacity for Lot 8 is in full use by the existing 3-bedroom Gould residence.

The Goulds intend to seek an amendment to Permit WW-9-1311-1 whereby their existing single-family dwelling approval for 3-bedrooms will be reduced to 2-bedrooms, and the extra capacity for the third bedroom will be transferred to the new accessory dwelling. Again, the Goulds have not applied for, and thus have not obtained, any permitting or approval for this amendment.

At trial, neither party provided any evidence relating to the technical requirements necessary to achieve the amendment to the existing wastewater permit. Nor did either party provide any evidence relating to whether the Goulds might be successful in achieving the

amendment.  Thus, the proposed amendment remains a possibility, nothing more and nothing less.

Regulations § 320(5) states that the Town's Administrative Officer shall not issue a permit unless the application for the permit is accompanied by "[w]ritten approval of any Federal, State, County, or Town agency or governmental body which may be required under existing laws." Thus, the Town argues that the permit for the accessory dwelling cannot be issued because the Goulds have not yet obtained the required state Wastewater System and Potable Water Supply Permit.

Regulations § 320(5) is relevant here, because this case began as an appeal before the DRB of the Town Administrative Officer's denial of the Goulds' application.  While the DRB subsequently denied the Goulds' application as well, development review boards in Vermont also have discretion to conditionally grant approvals or permits.  24 V.S.A. § 4464(b)(2) ("In rendering a decision in favor of the applicant, the panel may attach additional reasonable conditions and safeguards as it deems necessary to implement the purposes of this chapter and the pertinent bylaws and the municipal plan then in effect.").  This Court, on appeal, has the same discretion.  In re King Garage Const. Permit, No. 202-9-08 Vtec, slip op. at 13 (Vt. Envtl. Ct. July 9, 2009) (Durkin, J.) ("We are afforded all the powers and responsibilities as provided to the DRB in its review below of Applicant's proposed garage. . . [including] the discretion to attach 'reasonable conditions and safeguards as [the DRB in the first instance, and this Court on appeal] deems necessary.'" 24 V.S.A. § 4464(b)(2) (quoting In re Torres, 154 Vt. 233, 235 (1990)).

As addressed above, we conclude that the Goulds' proposed accessory dwelling use is subordinate to that of the principal single-family dwelling, the Gould residence.  We also conclude that the proposed accessory dwelling may not exceed 581.70 square feet of habitable floor area, which is the equivalent of 30 percent of the total habitable floor area of the Gould residence. Lastly, we conclude that although the Goulds have not demonstrated that the Property has sufficient wastewater capacity, the Goulds have testified to their general plan for obtaining state approval for the needed wastewater capacity.  Thus, we approve the Goulds' application for a building permit for the proposed accessory dwelling on the following conditions:

1. The Goulds must obtain State of Vermont approval for sufficient wastewater capacity;

2. The Goulds must develop plans for their accessory dwelling showing that the habitable floor area, as defined and described above, totals 581.70 square feet or less.

**IV.    Constitutional and Process Challenges**

In their Statement of Questions the Goulds allege procedural errors and violations of constitutional protections.  As we conditionally approve the Goulds' application for an accessory dwelling, we need not consider these additional issues; they are now moot.

### Conclusion

For the reasons discussed above, we conclude that Applicants are entitled to a building permit for their proposed accessory dwelling.  We condition our approval on the following requirements:

1. The Goulds must obtain State of Vermont approval for sufficient wastewater capacity for the accessory dwelling;

2. The Goulds must develop plans for their accessory dwelling showing that the habitable floor area, as defined and described above, totals 581.70 square feet or less.

Once the Goulds satisfy these conditions, the Goulds may present documentation supporting their compliance with these conditions to the Town of Monkton Administrative Officer to complete the ministerial act of issuing a building permit for an accessory dwelling that is consistent with the conditions set forth in this opinion.

A Judgment Order accompanies this Decision.  This completes the current proceedings before this Court.

Done at Berlin, Vermont, this 31st day of October, 2012.

_____
Thomas G. Walsh, Environmental Judge