2009 VT 48

## State of Vermont v. Timothy Mumley

[978 A.2d 6]

No. 08-114

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed May 8, 2009

---

*Thomas Donovan, Jr.*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Edward M. Kenney*, South Burlington, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant Timothy Mumley appeals from a jury conviction for attempted kidnapping in violation of 13 V.S.A. §§ 9, 2405(a)(1)(D). Defendant argues that the Chittenden District Court committed reversible error when it denied his motion to suppress statements he made to police while in custody. We agree, and reverse.

¶ 2. Defendant's conviction arises from an incident that occurred on October 20, 2006. On that date, defendant allegedly tried to pull a woman into his pickup truck while she was pushing her child in a stroller on a Winooski sidewalk. Defendant was arrested and taken to the Winooski Police Department, where he was questioned by a detective in an interrogation room. The entire interrogation was video-recorded.

¶ 3. Prior to questioning defendant, the detective warned defendant of his privilege against self-incrimination and his right to counsel as required by *Miranda v. Arizona*, 384 U.S. 436 (1966), and 13 V.S.A. § 5234. He read defendant his warnings one-by-one, from a *Miranda*-waiver form. The form listed each of the *Miranda* rights followed by the question "Do you understand?" and a blank space for a reply. After reciting each warning to defendant, the detective asked defendant whether he understood. Defendant replied "yes" to each of these questions. The detective recorded defendant's replies on the form.

¶ 4. Underneath the *Miranda*-rights portion of the form was the title "Waiver," and the following paragraph:

> I have been advised of my rights and I understand them. No threats or promises have been made to me. Knowing my rights, I agree to waive them and talk with you now. I understand that I am waiving my right to be represented by an attorney, to talk with an attorney before questioning and to have an attorney present during questioning.

Under this paragraph was a space for the date and time and a space for a signature or "time of taping."

¶ 5. The detective did not read the entire waiver paragraph to defendant. Rather, the detective read only the following: "I have been advised of my rights and I understand them. No threats or promises have been made to me. Knowing my rights, I agree to waive . . . ." The detective did not provide defendant with the

opportunity to read the balance of the form nor did he have defendant sign the form. The following exchange then occurred:

Detective: Do you want to talk to me?

Defendant: What about?

Detective: Ah, what, ah . . . you can talk to me, you can tell me to pound sand. You know, those are your rights, okay? Now, it doesn't affect them one way or the other. What I'm concerned about is that, I want to make sure, you know, what happened tonight, you be given an opportunity to, you know, explain your actions which will happen in a court of law. But this is also an opportunity for you, if you want it, you can write down a sworn statement and apologize for what happened tonight. That's something. It's your choice you know.

Defendant: Which is what?

Detective: Do you understand what is going on here at all?

Defendant: No, no, I don't.

Detective: Well, as I stated over at your apartment, you're under arrest for attempted kidnapping.

Defendant: Okay.

¶ 6. The detective made no more attempts to secure a waiver of defendant's rights to silence and to an attorney. Eventually, defendant answered some of the detective's questions.

¶ 7. Defendant sought to suppress the statements he made during the interrogation. In his motion to suppress, defendant argued that he did not waive his rights, or, in the alternative, that the waiver was invalid under *Miranda*. Defendant also argued that the detective violated his rights by failing to secure a recorded waiver as required by 13 V.S.A. § 5237. Section 5237 provides that a person who has been informed of his or her right to counsel as required by § 5234 may waive those rights:

in writing, or by other record, . . . if the court, at the time of or after waiver, finds of record that he has acted with full awareness of his rights and of the consequences of a waiver and if the waiver is otherwise according to

law. The court shall consider such factors as the person's age, education, and familiarity with the English language, and the complexity of the crime involved.

13 V.S.A. § 5237. The State responded, arguing that, considering the totality of the circumstances, defendant knowingly and intelligently waived his *Miranda* rights, and that defendant's waiver was valid under § 5237 because it was video-recorded.

¶ 8. The district court denied defendant's motion. It concluded that "assuming the court finds that defendant possessed the requisite experience, education, background, and intelligence to understand the nature of his *Miranda* rights and the consequences of waiving them," defendant made a valid implicit waiver of his *Miranda* rights. The court then concluded that because this waiver was recorded on video it was valid under § 5237.

¶ 9. At trial, the complainant testified that defendant tried to pull her into his black pickup truck while she was pushing her child in a stroller on a sidewalk, returning home from the post office. She further testified about the encounter as follows. As the complainant walked north on Weaver Street, defendant started following her in his truck, making rude, sexually suggestive remarks, and asking her if she wanted a ride. She was walking northward on the west side of Weaver Street, and defendant was travelling northward in the wrong lane of traffic, weaving around parked cars, so that he was in the lane of traffic adjacent to her. During this portion of the encounter the complainant threatened to call the police. At some point, defendant proceeded ahead of her to the intersection of Weaver and Union Streets and turned left onto Union Street. She proceeded to the same intersection, crossed Union Street, and turned left, walking on the north side of Union Street. While the complainant was walking on Union Street, defendant, who was ahead of her, turned around in a driveway, drove back toward her, then crossed into the wrong lane of traffic again, stopped the truck, and attempted to grab her and pull her into his pickup. Defendant drove off when the driver of a green Ford in the oncoming lane of Union Street honked the horn twice.

¶ 10. One eyewitness testified for the State. The witness testified that while travelling north on Weaver Street in her green Ford Taurus, she noticed that traffic had stopped because of a dark pickup truck that had stopped in the middle of the road two cars

in front of her. She testified that the man in the pickup truck was speaking with someone on the sidewalk. According to the witness, after she honked her horn twice, the truck "took off," and the witness then observed the complainant, "visibly upset . . . motoring towards the end of [Weaver] [S]treet." In contrast to the complainant's testimony, the witness testified that the truck did not turn left on Union Street, but rather either continued straight or turned right, and that the witness did not turn left on Union Street. The witness testified that after observing the encounter she continued straight on Weaver Street.

¶ 11. The arresting officer and a detective also testified for the State. The officer testified that defendant's truck and license plate number matched the description given by the complainant. The detective testified that the complainant correctly identified defendant in a photo lineup. The detective also testified that, during the interrogation at the police station, defendant admitted: (1) that he had seen the complainant; (2) that he had driven by her several times; (3) that the complainant spoke to him; (4) that the complainant told defendant that she was calling the police; and (5) that, when asked why the complainant would threaten to call the police, defendant replied that he did not know.

¶ 12. At trial, the defense argued that the complainant's story was improbable and that neither defendant nor the eyewitness made a left on Union Street toward the site of the alleged attempted kidnapping.

¶ 13. On appeal, defendant argues that he did not make a valid waiver of his *Miranda* rights because: (a) silence in response to a request to waive does not constitute waiver; and (b) the court failed to properly apply the totality-of-the-circumstances approach articulated in *State v. Malinowski*, 148 Vt. 517, 518-20, 536 A.2d 921, 922-23 (1987). Defendant also argues that the waiver was invalid under § 5237 because: (a) that section requires waivers to be affirmative, express, and recorded; and (b) the trial court failed to consider the factors set forth in the statute. Finally, defendant makes several arguments regarding the court's refusal to view — or to allow the jury to view — the vehicle defendant was driving at the scene of the alleged crime. We agree with defendant that the court erred in not evaluating the factors set forth in *Malinowski* and § 5237, and do not reach the balance of his arguments.

■■ ¶ 14. Under the United States Supreme Court's landmark decision in *Miranda*, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 U.S. at 475; see also *State v. Stanislaw*, 153 Vt. 517, 529, 573 A.2d 286, 293 (1990) ("The State bears a heavy burden in showing a waiver of *Miranda* rights."). Courts may find that a defendant knowingly and intelligently waived his *Miranda* rights only "upon an inquiry into the totality of the circumstances surrounding the interrogation." *Fare v. Michael C.*, 442 U.S. 707, 724-25 (1979) (citing *Miranda*, 384 U.S. at 475-77). "The totality approach permits — indeed, it mandates — inquiry into all the circumstances surrounding the interrogation." *Id.* at 725. We noted in *Malinowski* that in *Fare v. Michael C.* the United States Supreme Court specifically mandated a totality-of-the-circumstances approach to evaluating *Miranda* waivers. 148 Vt. at 522, 536 A.2d at 924. In order for a court to find that a defendant has made a knowing and intelligent waiver, we require it to make findings regarding the "defendant's experience, education, background, intelligence or capacity to understand the warnings and the meaning of a waiver." *Id.*; see also *State v. Tribble*, 2005 VT 132, ¶ 27, 179 Vt. 235, 892 A.2d 232 ("In reviewing whether a defendant made a valid waiver, we consider the totality of the circumstances.").

■ ¶ 15. In addition to our case law, our statutory law requires courts to consider the circumstances under which a defendant waives the privilege against self-incrimination and the right to counsel as guaranteed by *Miranda* and § 5234 before concluding that the waiver was valid. Under § 5237, a defendant's waiver is valid if the court finds that "he has acted with full awareness of his rights and of the consequences of a waiver and if the waiver is otherwise according to law." In making such findings, "[t]he court *shall* consider such factors as the person's age, education, and familiarity with the English language, and the complexity of the crime involved." *Id.* (emphasis added). Although the statute's discretionary "such factors as" language affords trial courts flexibility in choosing which factors to consider, the mandatory "shall" creates a requirement impervious to judicial discretion. See *Town of Victory v. State*, 174 Vt. 539, 544, 814 A.2d 369, 376 (2002) (mem.) ("Use of the word 'shall' in a statute generally means that the action is mandatory . . . ."). In short, under § 5237, a court

must consider factors indicating whether a defendant acted with full awareness of his rights, and the consequences of waiving those rights, before finding that the defendant knowingly and intelligently waived them.

¶ 16. Here, the trial court's decision and order denying defendant's motion to suppress contains no consideration of factors indicating a knowing and intelligent waiver of *Miranda* rights as required by *Fare* and *Malinowski*, and no consideration of factors indicating his awareness of his § 5234 rights and the consequences of waiving them as required by § 5237. Instead, as far as we can tell from its order, the court reached its conclusion that defendant made a valid waiver of his rights by "assuming . . . that defendant possessed the requisite experience, education, background, and intelligence to understand the nature of his . . . rights and the consequences of waiving them." The trial court erred under *Malinowski* and § 5237 by failing to make the required inquiry.

¶ 17. The State argues that defendant failed to preserve the issue we address above, and, alternatively, that any erroneous admission did not prejudice defendant's case. Neither argument has merit.

¶ 18. The State contends that defendant did not preserve the argument that his waiver was invalid because his motion to suppress the statements at issue argued only that there was no waiver at all. This Court has long held that issues not presented at trial may not be raised on appeal. See, e.g., *Lanphere v. Beede*, 141 Vt. 126, 129, 446 A.2d 340, 341 (1982) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."); *Bebee v. Steel*, 2 Vt. 314, 316 (1829) (same). However, where a litigant's argument is clear enough for the trial court to evaluate it and for an opponent to respond to it, the claim is adequately preserved for appeal. *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 12, 181 Vt. 513, 928 A.2d 497.

¶ 19. We read defendant's motion to suppress as arguing primarily that he did not waive his *Miranda* and § 5234 rights, and arguing alternatively that any implied waiver was not knowing and intelligent, and therefore was invalid. In support of his motion, defendant explicitly cited *Stanislaw* for the proposition that the State must prove a "knowing and intelligent" waiver, and argued that "[t]he detective's conduct in this matter could not

more closely match *Miranda*'s scenario of an *invalid* waiver." Although we would not place a trial court in error regarding an issue it did not have the opportunity to address, the trial court here had that opportunity. Moreover, the trial court referenced the factors it was required to consider, but erred by making an assumption instead of making the required factual findings. Defendant placed the issue of validity squarely before the trial court and thus preserved it.

■ ¶ 20. The State's argument that any erroneous admission of statements was harmless and nonprejudicial also fails. Under the Vermont Rules of Criminal Procedure, "[a]ny error . . . which does not affect substantial rights shall be disregarded." V.R.Cr.P. 52(a). "For the error to be harmless, the reviewing court must find beyond a reasonable doubt that the jury would have returned a guilty verdict regardless of the error." *State v. Oscarson*, 2004 VT 4, ¶ 30, 176 Vt. 176, 845 A.2d 337. When conducting a harmless-error analysis to determine whether the jury would have convicted without the offending evidence, we consider the extent to which the offending evidence was inculpatory, whether it was cumulative or duplicative of other evidence, and how prominent it was at trial. See *State v. Keith*, 160 Vt. 257, 265-66, 628 A.2d 1247, 1252-53 (1993) (considering whether erroneously admitted evidence was inculpatory or exculpatory), *overruled on other grounds by State v. Brillon*, 2008 VT 35, ¶ 42, 183 Vt. 475, 955 A.2d 1108);[1] *State v. Lynds*, 158 Vt. 37, 42, 605 A.2d 501, 503 (1991) (considering prominence of erroneously admitted evidence at trial and presence or absence of corroborating and contradictory evidence). Analyzing these factors helps us understand how heavily the jury was likely to have relied on the evidence.

¶ 21. Here, the trial court erroneously admitted five statements that defendant made to police while in custody: (1) that defendant had seen the complainant; (2) that he had driven by her several times; (3) that the complainant spoke to him; (4) that the complainant told him that she was calling the police; and (5) that, when the detective asked him why the complainant would threaten to call the police, defendant replied that he did not know.

---

[1] The United States Supreme Court recently overruled *Brillon* on grounds unrelated to today's decision. *Vermont v. Brillon*, 556 U.S. ___, ___, 129 S. Ct. 1283, 1287 (2009).

¶ 22. The extent to which the statements were inculpatory or duplicative varied. Defendant's statement that he had seen the complainant placed him at the scene of the alleged attempted kidnapping. Similarly, defendant's statements that the complainant spoke to him, that she threatened to call the police, and that he did not know why she would do so, constituted an admission that there had been an interaction between them. However, all of these statements were corroborated by eyewitness testimony, the complainant's testimony, or both.

¶ 23. Most prejudicial was defendant's statement that he drove by the complainant several times. This statement substantially undermined the defense's theory of the case. The defense argued that defendant may have had an interaction with the complainant, but that he never turned left on Union Street toward the site of the alleged attempted kidnapping or turned his truck around. The eyewitness's testimony that neither she nor defendant turned left on Union Street tended to support the defense's theory and discredit the complainant's version of events. Defendant's statement that he drove past the complainant several times had the potential to cast significant doubt on the defense's theory and to bolster the complainant's story. Additionally, because the eyewitness in the green Ford testified that defendant went straight or right at the intersection of Weaver and Union, defendant's statement that he drove past the complainant several times is corroborated by the complainant's testimony alone.

¶ 24. All of defendant's statements to police were fairly prominent at trial. In addition to offering them into evidence, the State referred to defendant's statements in its opening and closing statements. In its opening, the State explained that the evidence would show:

> [Defendant] admitted that he had seen this — a woman, this person pushing a stroller. He also made statements that there was a conversation. And he also told the police that at some point the woman mentioned to him, that she mentioned something about calling the police and the police asked [defendant], "Why would she say that?" And [defendant]'s response was, "I don't know."

Defendant's statements were introduced at trial through the detective who interrogated him, and were central to the detective's testimony. The prosecuting attorney referred to them four addi-

tional times while questioning the detective. In its closing, the State summarized the erroneously admitted statements and suggested what inferences the jury could draw from them:

> Does he admit to [the detective] that he was in Winooski? You bet. Does he admit to [the detective] that he saw a young woman? You bet. Does he admit to [the detective] that he saw that stroller? Yup. Does he admit that he actually had a conversation with this woman? Yup. Does he admit that he heard her say, "I'm going to call the police." Yes.[2]

■ ¶ 25. In short, defendant's erroneously admitted statements to police were harmful enough to his case and prominent enough at trial to have prejudiced defendant's case. In the aggregate, they create a reasonable doubt as to whether the jury would have rendered a guilty verdict without them, and thus require us to reverse defendant's conviction and remand for proceedings consistent with this opinion.

¶ 26. In conclusion, the trial court erred by admitting defendant's custodial statements without conducting the required totality-of-the-circumstances inquiry into the validity of defendant's waiver. Because we cannot conclude beyond a reasonable doubt that the error was harmless, we reverse.

*Reversed and remanded.*

---

[2] The record indicates that the State's closing argument continued as follows:

> But then an interesting thing happened. By this time he knows he's in trouble and he decides to shift the blame away from him to her and he tells the police officer this story about driving up Weaver Street or driving in Winooski and he sees a woman acting weird and she's saying something, he doesn't have a clue what she's saying, she's yelling at him, and so instead of just passing by and just going home, by the way, it's raining at this point, instead of going home, he turns around and comes back to get another look at her.

The statements referred to in this part of the State's closing argument were not entered into evidence and were not objected to by defendant. We therefore do not evaluate their potential effect on the jury verdict.