2009 VT 75

# State of Vermont v. Michael M. Christmas

[980 A.2d 790]

No. 08-303

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed July 24, 2009

*Erica A. Marthage*, Bennington County State's Attorney, and *Christina Rainville*, Deputy State's Attorney, Bennington, for Plaintiff-Appellant.

*Matthew F. Valerio*, Defender General, and *Anna Saxman*, Deputy Defender General, Montpelier, for Defendant-Appellee.

¶ 1. **Reiber, C.J.** The State of Vermont appeals from the district court's order granting a motion to suppress statements made by defendant Michael M. Christmas to a detective after defendant's arrest on suspicion of committing murder. The district court concluded that the detective failed to scrupulously honor defendant's Fifth Amendment rights because, as the detective admitted, his efforts to establish rapport with defendant were intended to elicit a confession. We affirm.

¶ 2. Defendant allegedly rode his bicycle to his father-in-law's house, where his brother-inlaw, Ronald Wilkins, was seated on the porch, and shot Wilkins in the head and chest. While in custody at the police barracks, and without first administering *Miranda* warnings, the detective asked defendant whether he wanted to speak with him. Defendant replied, "No." The detective left defendant after he invoked his right to silence, but returned periodically to offer him water, coffee, and bathroom breaks. He also made small talk with defendant, discussing sports and telling defendant personal stories to demonstrate that he had experiences that related to defendant's situation. None of these conversations were recorded.

¶ 3. Approximately an hour and a half after defendant invoked his right to silence, the detective asked defendant again if he wanted to talk about what happened and commented on the importance of defendant telling his side of the story. The detective did not administer *Miranda* warnings before posing the question. Defendant responded, "You better have a long time," and the detective assured him that he had all the time defendant would need. The officer then administered *Miranda* warnings for the first time. Defendant then waived his rights and confessed to the murder and two sexual assaults.

¶ 4. Prior to trial, defendant moved to suppress his confession, arguing that he had clearly asserted his Fifth Amendment right to

remain silent and that the detective's continued interrogation after he had exercised this right was unlawful. The State opposed the motion, contending that the detective's actions were permissible under *Michigan v. Mosley*, 423 U.S. 96, 103-04 (1975). After a hearing on this limited question, the district court agreed with defendant, finding that the detective's conduct did not scrupulously honor defendant's Fifth Amendment rights. See *Miranda v. Arizona*, 384 U.S. 436, 479 (1966).

¶ 5. The district court relied principally on *Mosley*, analyzing the factors enunciated therein to determine whether defendant's right to remain silent was "scrupulously honored." The court first analyzed the detective's conduct between his two express requests to defendant to talk: specifically, whether the detective's small talk and personal stories amounted to "interrogation." The court found it apparent that the detective's conduct during this period was interrogation under *Mosley* because the detective had been trained in subtle, rapport-based interrogation "which was designed to and which [the detective] reasonably believed would result in the defendant providing an incriminating statement." Based on this finding, the court also found that there was no meaningful break in time between the two requests for defendant to talk to the detective. Finally, the court noted that there had been no attempt to administer *Miranda* warnings until after defendant had agreed to make a statement. The district court therefore concluded that the detective had failed to scrupulously honor defendant's rights, and granted defendant's motion to suppress. This appeal followed.

¶ 6. " 'A motion to suppress evidence presents a mixed question of fact and law. While we uphold the trial court's factual findings absent clear error, we review the trial court's conclusions of law de novo.' " *State v. Fleurie*, 2008 VT 118, ¶ 10, 185 Vt. 29, 968 A.2d 326 (quoting *State v. Bauder*, 2007 VT 16, ¶ 9, 181 Vt. 392, 924 A.2d 38).

¶ 7. At issue here is whether the district court correctly concluded that the detective did not properly respect defendant's right to remain silent. After defendant initially declined to talk, the detective engaged him in intermittent conversations for ninety minutes until the detective again expressly asked defendant if he would discuss the crime. Only after he had gained defendant's consent to talk did the detective administer *Miranda* warnings.

¶ 8. The question before us, then, may be stated thus: after defendant indicated that he wished to remain silent, did interrogation cease? Under *Miranda*, if it did not, any evidence obtained from the subsequent interrogation may not be admitted. As the Supreme Court held in *Miranda*:

> If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.

384 U.S. at 473-74. We thus must determine whether the detective's interaction with defendant after defendant invoked his right to silence and before warnings were administered was interrogation. The *Miranda* Court was not squarely confronted with the question of how to define interrogation. That question, however, was the central focus of *Rhode Island v. Innis*, 446 U.S. 291 (1980).

¶ 9. In *Innis*, the defendant was arrested for murder and kidnapping. A shotgun was involved in the murder and had not been located at the time of his arrest. He was given *Miranda* warnings and exercised his right to remain silent. However, after overhearing two officers discuss the possibility of a disabled child injuring herself if she found the murder weapon, defendant relented and told the officers the location of his hidden shotgun. Defendant unsuccessfully moved to suppress his statements about the shotgun at trial, *id.* at 295-96, but had his conviction vacated on appeal by the Rhode Island Supreme Court, which concluded that defendant had been impermissibly interrogated when the officers mentioned the danger to the disabled child. The United States Supreme Court, however, held on appeal that the police should not have reasonably known their action would elicit an incriminating response because "[t]his is not a case where the police carried on a lengthy harangue in the presence of the suspect . . . [and] the record [does not] support the respondent's contention that, under the circumstances, the officers' comments were particularly 'evocative.' " *Id.* at 303.

¶ 10. The *Innis* Court held that interrogations occur "whenever a person in custody is subjected to either express questioning

or its functional equivalent." *Id.* at 300-01. More precisely, the Court held that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. Thus, *Innis* reframes the question before us: should the detective have known that his words or actions were "reasonably likely to elicit an incriminating response"? *Id.*

¶ 11. The district court recognized that much of defendant's interaction with the detective at the station was unrelated to an investigatory purpose, but that the detective, admittedly, recounted personal stories of a kind intended to evoke an inculpatory response. The court thus concluded that the detective's "conduct exceeded the normal incidents of custody which were permissible under the circumstances, because he actively used his interactions to convince the defendant to make a statement." The district court found that the detective's "offers of rest and refreshments were intended to create a rapport, in order to convince the defendant to trust him." Furthermore the detective admitted that "it was likely that he told [defendant] 'personal' stories apparently based on his own life, that were intended to demonstrate that he had experience that was in some way related to the defendant's current situation." Finally, the court found that ninety minutes after defendant invoked his right to remain silent, and before administering *Miranda* warnings, the detective again directly asked defendant whether he was ready to talk about the shooting. As the district court found, "[the detective] had no intention of accepting the defendant's initial refusal as his final word, and he *deliberately* took advantage of these opportunities both to build rapport with the defendant and to encourage him to change his mind." (Emphasis added.)

¶ 12. Although the district court's analysis largely concerned *Mosley*, we conclude on this record that *Innis* governs and that the detective's actions violated the standards announced therein.[1]

---

[1] In *Mosley*, the defendant was given *Miranda* warnings before his initial questioning, at which time he stated that he did not want to discuss two robberies. Questioning ceased and the defendant was not questioned again about those robberies. Rather, two hours later he received a fresh set of *Miranda* warnings and questioned about a different crime. 423 U.S. at 104-05. *Mosley* was "not a case, therefore, where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon

As noted, the inquiry under *Innis* is whether the police should have known that their actions were reasonably likely to elicit an incriminating response.

¶ 13. The district court, as noted, found that over an hour after defendant invoked his right to silence, the detective directly "asked the defendant if he wanted to talk to him," and commented "about the importance of the defendant's 'side' of the events being heard and understood." In light of this direct questioning, the State's assertion that the detective did not intend to elicit incriminating information and "respected Defendant's right to avoid interrogation" does not withstand scrutiny under *Innis* and *Miranda*. The detective here, having never administered *Miranda* warnings and aware that defendant had invoked his right to remain silent, directly asked him whether he was ready to talk about the crime for which he was under arrest, and about which he had earlier asserted his right to remain silent. Whatever may be said about the detective's earlier rapport-building conversations with defendant, this direct request for information is squarely contrary to *Innis*. Certainly the detective should have known that such a request was "reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 301. We therefore affirm the trial court, albeit on a different basis. See *State v. Guzman*, 2008 VT 116, ¶ 10 n.3, 184 Vt. 518, 965 A.2d 544 (Court will affirm the trial court's decision if it reached the right result for the wrong reason).[2]

¶ 14. Finally, shortly before oral argument, the State urged us to adopt the approach recently taken by the Supreme Court of the United States in *Herring v. United States*, ___ U.S. ___, 129 S. Ct. 695 (2009). The Court in *Herring* narrowed the exclusionary rule in the Fourth Amendment context, holding that in order "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently

---

request or by persisting in repeated efforts to wear down his resistance and make him change his mind." *Id.* at 105-06.

[2] The State also asserts that the district court took an improper negative inference against the State due to the detective's failure to record any of his conversations with defendant prior to his confession. This failure was compounded, the district court found, by misleading statements the detective made to defendant about recording his confession. However, because the record amply supports affirmance without drawing any such inference, we need not consider whether the negative inference was proper. Any inference drawn was harmless error, if error at all.

culpable that such deterrence is worth the price paid by the justice system." *Id.* at \_\_\_, 129 S. Ct. at 702. We find no basis for following the logic of *Herring* here, and the State has offered none. *Herring* is a Fourth Amendment case, and the State has submitted nothing to justify extending its holding to the Fifth Amendment. *Herring* was a case in which police, acting entirely in good-faith reliance on a police database that said there was an outstanding warrant for the defendant, detained and searched him, finding drugs. Minutes later, the police learned that the warrant had expired months ago, but the database had not been updated "for whatever reason." *Id.* at \_\_\_, 129 S. Ct. at 698. How this radically different factual scenario — and the disparate legal framework under which the *Herring* Court analyzed it — might inform our analysis is murky at best. We decline the State's invitation to graft the *Herring* approach onto this case.

*Affirmed.*