2011 VT 135

### State of Vermont v. Jeremy Robitaille

[38 A.3d 52]

No. 10-078

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed December 15, 2011

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Anna Saxman*, Deputy Defender General, Montpelier, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant appeals from his conditional guilty plea to assault and robbery, arguing that the trial court erred in denying his motion to suppress. Defendant maintains that statements he made to police were taken in violation of his rights under the Public Defender Act (PDA), 13 V.S.A. § 5234(a), and the Vermont Constitution. He also asserts that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. We affirm.

¶ 2. In denying defendant's motion to suppress, the trial court made the following findings. Defendant was arrested in Burlington following an assault and robbery at the Enosburg Pharmacy. Sergeant Paul Morits of the Franklin County Sherriff's Office met defendant at the police station and informed defendant of his *Miranda* rights. Defendant invoked his right to remain silent and his right to counsel, and all conversation between Morits and defendant ceased. Morits did not contact a public defender immediately thereafter, and defendant did not ask for an attorney by name.

¶ 3. While arrangements were being made to transfer defendant to a correctional facility, Morits conversed with another police officer about a third officer's pregnancy. Defendant was a few feet away, but none of the conversation was directed at or concerned defendant. Shortly thereafter, defendant asked Morits if defendant's girlfriend had been arrested. Morits responded that she had been released, and resumed his conversation with the other officer. A few minutes later, defendant asked if anyone else was going to be arrested. Morits stated that he was looking at several other people. Defendant next asked about someone named Elvin Sweet. Morits informed defendant that he had spoken with Sweet and that Sweet denied knowing defendant.

¶ 4. Defendant then asked Morits what kind of deal he could get. Morits told defendant that he could not make any deals, but that the state's attorney might be more inclined to make a deal if defendant cooperated. Defendant waited another minute and said, "OK, I'll talk to you." Morits again informed defendant of his *Miranda* rights and asked defendant if he wanted a lawyer present. Defendant stated that he did not. Morits provided

defendant with a written waiver form. Morits also read a portion of the form out loud to defendant, including the following:

> I've been advised of my rights and understand them. No threats or promises have been made to me. I understand that I am waiving my rights to be represented by a lawyer, to talk with the lawyer before questioning and to have a lawyer present during questioning. Knowing my rights, I agree to waive them and talk to you now.

Defendant signed the waiver form and provided a statement to police.[1] Fifteen minutes elapsed between the time defendant first invoked his rights and the time that he waived them.

¶ 5. Based on these and other findings, the court denied defendant's motion to suppress. The court first found that defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights prior to making any statements to police. It also rejected defendant's assertion that the deputy's failure to provide him with an attorney immediately upon detention required the suppression of his statement under the PDA, regardless of whether defendant subsequently waived his right to an attorney.

¶ 6. As the court explained, the statutory language of the PDA required police to contact an attorney at "the commencement of detention" if the accused did not have an attorney and did not effectively waive his right to one. 13 V.S.A. § 5234(a)(2); *State v. Nicasio*, 136 Vt. 162, 165, 385 A.2d 1096, 1099 (1978), *overruled on other grounds by State v. Savo*, 139 Vt. 644, 433 A.2d 292 (1981). The court found that detention had commenced in this case as defendant had been arrested for a serious crime and he was awaiting transportation to a detention facility.

¶ 7. Once triggered, the PDA placed an affirmative duty upon the officer to "notify the appropriate public defender" if "the person detained or charged does not have an attorney and does not knowingly, voluntarily and intelligently waive his or her right to have an attorney when detained or charged." 13 V.S.A. § 5234(a)(2). It was undisputed that the deputy here did not contact or attempt to contact a public defender on defendant's behalf after defendant invoked his right to remain silent. The

---

[1] This interview was audiotaped, and on the tape, defendant reiterated that he had been advised of his rights, and that he agreed to speak to Morits without a lawyer present.

primary issue before the court, then, was whether the deputy's failure to contact a public defender during the fifteen minutes between when defendant invoked his right to an attorney and when he subsequently waived that right violated the PDA.

¶ 8. In conducting its analysis, the court looked to the purpose of the PDA, which is to address *Miranda*'s concern for bad faith interrogation of individuals accused of a crime without the presence of counsel. The court found no evidence of bad faith here, noting that the brief delay was attributable to arranging transportation for defendant. The court also found no legal support for the proposition that a nonindigent defendant would have the right to consult an attorney before deciding whether to waive his or her right to an attorney. In other words, it rejected the suggestion that once the right to counsel was invoked, it could never be waived unless counsel was first provided to the defendant. See *Edwards v. Arizona*, 451 U.S. 477, 485-86 (1981) (upholding validity of defendant's waiver of counsel where defendant had initially invoked right to counsel, and later waived it, all without the assistance of counsel). The court thus concluded that the circumstances presented here did not warrant suppression of defendant's statements. Defendant entered a conditional guilty plea, and this appeal followed.

¶ 9. We begin with defendant's assertion that the police violated his right to counsel under the PDA and Chapter I, Article 10 of the Vermont Constitution by failing to notify a public defender immediately upon his detention. Implicit in defendant's argument is the notion that he was entitled to consult with counsel before deciding to waive his rights. We review the trial court's factual findings for clear error, and its conclusions of law de novo. *State v. Pontbriand*, 2005 VT 20, ¶ 12, 178 Vt. 120, 878 A.2d 227. As discussed below, we find no error.

¶ 10. The PDA provides in relevant part:

> (a) If a person who is being detained by a law enforcement officer without charge or judicial process, or who is charged with having committed . . . a serious crime, *is not represented by an attorney under conditions in which a person having his or her own counsel would be entitled to be so represented,* the law enforcement officer . . . shall:

(1) Clearly inform him or her of the right of a person to be represented by an attorney and of a needy person to be represented at public expense; and

(2) If the person detained or charged does not have an attorney and does not knowingly, voluntarily and intelligently waive his or her right to have an attorney when detained or charged, notify the appropriate public defender that he or she is not so represented. This shall be done upon commencement of detention, formal charge, or post-conviction proceeding, as the case may be.

13 V.S.A. § 5234(a)(1)-(2) (emphasis added); see also *id.* § 5235 (providing that law enforcement officer who determines that person is entitled to be represented by an attorney at public expense must "promptly" notify appropriate public defender).

¶ 11. Defendant argues that under the plain language of the statute Morits was obligated to contact a public defender for him either at the moment that he was detained or at the moment that he invoked his right to counsel. He asserts that because this requirement was not satisfied his statements must be suppressed.

■ ¶ 12. We reject defendant's interpretation of the statute. As we have often repeated, "[t]he bedrock rule of statutory construction is to determine and give effect to the intent of the Legislature." *Delta Psi Fraternity v. City of Burlington*, 2008 VT 129, ¶ 7, 185 Vt. 129, 969 A.2d 54 (quotation omitted). We have recognized that legislative "intent is most truly derived from a consideration of not only the particular statutory language, but from the entire enactment, its reason, purpose and consequences." *Id.* (quotation omitted).

■ ¶ 13. We do not read the words "upon commencement of detention" to impose an obligation on law enforcement officers to contact a public defender at the exact moment a defendant is arrested or detained, or at the very instant that the right to counsel is invoked. See *id.* (noting that if "literal meaning of the words is inconsistent with [legislative] intent, the intent must prevail" and that "such inconsistency occurs if applying the 'precise wording' of a statute produces results which are manifestly unjust, absurd, unreasonable or unintended, or conflicts with other expressions of legislative intent" (citations omitted)). Indeed, we rejected this approach in *State v. Picknell*, 142 Vt. 215, 225,

454 A.2d 711, 715 (1982). To require suppression under such circumstances, regardless of whether the defendant was subjected to custodial interrogation, would lead to absurd results and would not serve the purposes of the PDA. As discussed below, the PDA addresses the concerns identified by the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966), with respect to custodial interrogation, and these concerns are not implicated by the simple fact that fifteen minutes elapsed between defendant's invocation of his right to counsel and his waiver of that right. We need not determine precisely when counsel must be contacted. We hold only that under the circumstances here where defendant has been arrested and is awaiting transportation to a corrections facility, the failure to contact a public defender within fifteen minutes does not warrant suppression.

¶ 14. In reaching our conclusion, we are guided by the policies underlying *Miranda* and subsequent cases. *Nicasio*, 136 Vt. at 166, 385 A.2d at 1099. As we have recognized, § 5234(a) of the PDA "recognizes *Miranda*'s concern for bad faith interrogation of individuals accused of a crime without the presence of counsel, and reflects this state's policy of securing for those individuals an immediate right to counsel." *State v. Provost*, 2005 VT 134, ¶ 7, 179 Vt. 337, 896 A.2d 55 (quotation omitted). The PDA does not "establish[] a set of substantive rights in addition to the *Miranda* right to have counsel present at questioning." *Id.* Nor does it provide any "greater right to counsel to a needy person than to any other individual." *Id.* ¶ 8 (quotation omitted).

¶ 15. The Supreme Court's decision in *Miranda*, and by extension, the provisions of the PDA on which defendant relies, protect an individual's right against self-incrimination. See Vt. Const. ch. I, art. 10 (stating that person accused of crime cannot "be compelled to give evidence against oneself"); U.S. Const. amend. V (providing that "[n]o person . . . shall be compelled in any Criminal Case to be a witness against himself"). The *Miranda* Court recognized that "incommunicado interrogation of individuals in a police-dominated atmosphere" jeopardized this right. 384 U.S. at 445. Thus, it barred the use of any statements stemming from "custodial interrogation" unless the prosecution demonstrated "the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. This includes a requirement that, prior to any custodial interrogation, police advise a "putative

defendant that he has the right to remain silent and also the right to the presence of an attorney." *Edwards*, 451 U.S. at 481-82.

■ ■ ¶ 16. The United States Supreme Court has held that when an accused invokes his right to counsel he or she cannot be further interrogated by police until counsel has been made available, "*unless the accused himself initiates further communication, exchanges, or conversations with the police.*" *Id.* at 484-85 (emphasis added). The waiver of the right to counsel must be voluntary, knowing, and intelligent. *Id.* at 483-84. This rule applies equally under the PDA. *Provost*, 2005 VT 134, ¶ 7 ("A waiver of the right to counsel under *Miranda* also serves as a valid waiver of counsel under [13 V.S.A.] § 5234(a)."); see also *State v. Yoh*, 2006 VT 49A, ¶ 13, 180 Vt. 317, 910 A.2d 853 (recognizing that a suspect can reinitiate a conversation with police notwithstanding earlier invocation of right to counsel); 13 V.S.A. § 5237 (recognizing that defendant can waive the right to counsel).

■ ¶ 17. As referenced above, the *Miranda* Court was concerned about "custodial interrogation." 384 U.S. at 444. The Court recognized that "[t]he circumstances surrounding in-custody interrogation can operate very quickly to overbear the will" of someone who has merely been informed that he has the "right to remain silent." *Id.* at 469. Thus, it found that "the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege." *Id.*

■ ■ ¶ 18. This does not mean, however, that "each police station must have a 'stationhouse lawyer' present at all times to advise prisoners." *Id.* at 474. Rather, the Court explained that:

> if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation. If authorities conclude that they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the person's Fifth Amendment privilege so long as they do not question him during that time.

*Id.* This is consistent with the *Edwards* Court's recognition that "[t]he Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation," and that even

where a defendant invokes the right to counsel, there is no infringement of that right absent interrogation by police. 451 U.S. at 485-86. This Court has similarly recognized that "[t]he safeguards of *Miranda* attach whenever a person in custody is subjected to interrogation." *State v. FitzGerald*, 165 Vt. 343, 345, 683 A.2d 10, 13 (1996).

¶ 19. We found the absence of any "custodial interrogation" significant in deciding if suppression was warranted for an alleged violation of the PDA in *Picknell*, 142 Vt. at 225, 454 A.2d at 715. In that case, the defendant was arrested and transported to the police station. No interrogation occurred until approximately thirty minutes later, at which time the defendant was read his *Miranda* rights. The defendant waived his rights and was then interrogated by police.

¶ 20. The defendant later argued that his statements must be suppressed because the police failed to obtain a waiver of his right to an attorney *"at the precise moment he was arrested"* as required by 13 V.S.A. § 5234. *Id.* at 223, 454 A.2d at 714. We found that the defendant relied on a narrow interpretation of the phrase "commencement of detention" by insisting that the officers should have obtained an immediate waiver prior to transporting him to the police station. According to the defendant, the failure to obtain a timely waiver meant that, at the time of interrogation thirty minutes later, the officers remained obligated to contact his attorney. The defendant reasoned that, because noncompliance with 13 V.S.A. § 5234(a)(2) required suppression of statements obtained as a result of such noncompliance, the statements he made at the police station were inadmissible.

¶ 21. We rejected this argument. In reaching our conclusion, we looked to the purpose of the PDA and the holding of *Miranda*. "The flaw in defendant's argument," we explained, was "that it ignore[d] the fact that no custodial interrogation took place from the time he was arrested until the time he was issued his *Miranda* rights." *Id.* at 225, 454 A.2d at 715. "Had statements been obtained during this interim period," we continued, "they would have been inadmissible, since both *Miranda* and 13 V.S.A. § 5234(a) would have been violated." *Id.* When the defendant was advised of his *Miranda* rights, however, he knowingly, voluntarily, and intelligently waived them. We reasoned that "[o]nce the right to counsel was waived, the provisions of 13 V.S.A. § 5234(a) were fully complied with." *Id.* Because we found ample evidence to

support the trial court's finding of waiver, we upheld the denial of the defendant's motion to suppress.

¶ 22. We reach a similar conclusion here. As in *Picknell*, defendant here was not subject to any custodial interrogation in the fifteen minutes between the time he invoked his right to counsel and the time that he waived that right. Defendant was warned of his rights, and as discussed below, he voluntarily waived them prior to any custodial interrogation. The requirements of the statute were satisfied.

■■ ¶ 23. We reject defendant's implied assertion that he had the right to the advice of an attorney before making the voluntary decision to waive. No such right exists under *Miranda*, and the PDA provides no "greater right to counsel to a needy person than to any other individual." *Provost*, 2005 VT 134, ¶ 8 (quotation omitted). See, e.g., *Edwards*, 451 U.S. at 484-85; *Moran v. Burbine*, 475 U.S. 412, 422 (1986) (upholding validity of waiver of right to counsel, notwithstanding fact that attorney was attempting to reach defendant by telephone, recognizing that while information provided by attorney "would have been useful to [the defendant]; perhaps even it might have affected his decision to confess," the Court has "never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights"). As the *Moran* Court made clear,

> [o]nce it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.

*Id.* at 422-23.

■ ¶ 24. The cases cited by defendant do not persuade us otherwise. Defendant cites several out-of-state cases for the proposition that police "may not delay the notification of counsel." These cases are inapposite as they involve factually distinct situations and statutory provisions. See, e.g., *State v. Stoddard*, 537 A.2d 446, 452 (Conn. 1988) (holding, contrary to federal law under *Miranda*, that due process clause in state constitution required police to promptly inform suspect whom they were

holding for custodial interrogation of timely efforts by his counsel to render legal assistance); *State v. Ababa*, 65 P.3d 156, 161-62 (Haw. 2003) (suppression warranted under state law making it unlawful for police officer to "unreasonably refuse or fail to make a reasonable effort" to contact counsel upon request where police officer made no effort to contact attorney for detainee for three-and-a-half hours after request made); *City of Lakewood v. Waselenchuk*, 641 N.E.2d 767, 769-70 (Ohio Ct. App. 1994) (concluding that blood alcohol results should be suppressed where individual was denied her statutory right to communicate with counsel prior to taking an evidentiary breathalyzer test); *State v. Dunn*, 28 P.3d 789, 791-92 (Wash. Ct. App. 2001) (considering whether preprinted form adequately advised defendant of right to counsel "as soon as feasible" as required by state rule). We are equally unpersuaded by the DUI cases cited by defendant, which involve a different statutory right to counsel than that at issue here. See *State v. Nemkovich*, 168 Vt. 8, 11, 712 A.2d 899, 901 (1998) (stating that right to counsel under the implied consent statute and rights secured under *Miranda* "serve different purposes and operate independently of one another").

¶ 25. To the extent that we used the word "immediate" in describing the statutory right to counsel under the PDA, this language must be taken in its proper context. We held in *Nicasio*, 136 Vt. at 166, 385 A.2d at 1099, that the right to counsel under the PDA cannot await an assessment of financial need by a police officer. As we explained, "[t]o require the enforcement officer, often completely ignorant of the case except for the warrant in his hand, to determine on the spot the financial need of a respondent or its absence, and to honor his right to have an attorney notified only if he finds indigency, would subvert the whole purpose of the statute." *Id.* We summarized *Nicasio*'s holding in *State v. Duff*, as reflecting "the state's policy to secure for the person detained an immediate right to communicate with counsel concerning the impending proceedings against him." 136 Vt. 537, 539, 394 A.2d 1145, 1146 (1978). By this, we plainly meant that the notification of counsel cannot await a determination of financial need. It is equally clear from our holding in *Picknell* that we have not interpreted the term "commencement of detention" to mean that counsel must be provided to a defendant at the precise moment of arrest.

■■■ ¶ 26. Finally, defendant argues that the trial court erroneously required him to prove that the officer delayed contacting an attorney in bad faith. He also asserts that the court committed clear error in finding that the delay was caused by arranging transportation for defendant. Having found no violation of the statute through the fifteen minute delay, resolution of these issues is immaterial. We note, however, that the court did not require defendant to prove bad faith. Instead, it simply observed that there was no evidence that the officer was engaging in gamesmanship by not contacting an attorney within fifteen minutes, thereby distinguishing this case from others where motions to suppress were granted. See, e.g., *State v. Christmas*, 2009 VT 75, ¶¶ 12-13, 186 Vt. 244, 980 A.2d 790 (affirming suppression of confession where police detective engaged in actions that he should have known "were reasonably likely to elicit an incriminating response" from defendant who had invoked his right to silence). Given that, at its core, the PDA is designed to address "*Miranda*'s concern for bad faith interrogation of individuals accused of a crime without the presence of counsel," *Provost*, 2005 VT 134, ¶ 7, the absence of bad faith was not a wholly irrelevant consideration.

¶ 27. We turn next to defendant's assertion that the State failed to prove that he knowingly, voluntarily, and intelligently waived his right to counsel. Defendant complains that the State introduced only his signed written waiver in support of its position. Defendant also asserts that the trial court erroneously shifted the burden of proof to him, and that it failed to consider factors necessary to find a knowing and intelligent waiver.[2]

■■■ ¶ 28. The State was required to prove by a preponderance of the evidence that defendant's waiver was voluntary, and that it constituted "a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Edwards*, 451 U.S. at 482 (quotations omitted); *State v. Ives*, 162 Vt. 131, 134, 648 A.2d 129, 131 (1994) (identifying

---

[2] Defendant also asserts that the waiver was invalid because he was denied his right to counsel, and that his confession was not voluntary as it was a product of the violation of his right to counsel. Having found no violation of defendant's right to counsel, we reject these arguments.

State's burden of proof); see also 13 V.S.A. § 5237 (providing that waiver of rights is valid if court finds that defendant "acted with full awareness of his rights and of the consequences of a waiver and if the waiver is otherwise according to law" and that "court shall consider such factors as the person's age, education, and familiarity with the English language, and the complexity of the crime involved"). On review, we accord "great deference to the trial court's findings under the totality of the circumstances approach," mindful that it is the exclusive role of the trial court to weigh the evidence and assess the credibility of witnesses. *Ives*, 162 Vt. at 135, 648 A.2d at 131. The court's findings will stand unless clearly erroneous. *Id.*

¶ 29. In his motion to suppress, defendant cited the totality-of-the-circumstances standard but did not argue that he lacked the capacity to understand the warnings given, the nature of his rights, or the consequences of waiving those rights. Defendant did not testify to this effect at the motion hearing. Instead, defendant's argument appeared to focus on whether his statements were voluntary. In his proposed findings, defendant asserted that Morits had induced him to speak by stating that the state's attorney might be more inclined to make a deal with someone who cooperated. Defendant argued that this was "certainly a compelling inducement to a drug addict who ha[d] recently received a large quantity of narcotics and would certainly experience an excruciating withdrawal in jail."

¶ 30. The trial court rejected defendant's position. It found that defendant repeatedly initiated a conversation with Morits, seeking to discuss the investigation, and that Morits in no way influenced defendant's decision to do so. The court found no evidence to show that defendant had signed the waiver involuntarily or that his statements were the product of psychological manipulation. Nor did it find any evidence to show that defendant waived his rights without sufficient knowledge of what he was waiving. Thus, based on the totality of the circumstances, the court found that defendant's statements to police were voluntarily given after he waived his *Miranda* rights.

¶ 31. In reaching its conclusion, the court did not shift the burden of proof to defendant, as defendant suggests. The court simply weighed the evidence before it, and noted that defendant had produced no evidence to contradict the plain and unequivocal

averments in his signed written waiver. As set forth above, the record shows that defendant was twice informed of his *Miranda* rights. On the second occasion, he was provided with a written waiver form, a portion of which was read out loud to him. Defendant signed this waiver, explicitly acknowledging that he had been advised of his rights and understood them; he had not been threatened nor had any promises been made to him; he understood that he was waiving his right to be represented by a lawyer, to talk with the lawyer before questioning, and to have a lawyer present during questioning; and knowing his rights, he agreed to waive them and to speak to police. He repeated on an audiorecording that he had been advised of his rights, and that he agreed to speak to Morits without a lawyer present. There is ample evidence to support the court's decision that the waiver was valid.

¶ 32. Defendant faults the trial court for not making findings as to his age, and other factors, in assessing the totality of the circumstances. He also complains that the court did not explicitly account for his consumption of drugs prior to his arrest. These arguments were not preserved. See *Progressive Ins. Co. v. Brown*, 2008 VT 103, ¶ 8, 184 Vt. 388, 966 A.2d 666 (explaining that to preserve argument, party must raise it with "specificity and clarity" before trial court (quotation omitted)). As stated above, although defendant cited the totality of the circumstances test in his motion to suppress, he made no specific argument regarding its components. He never suggested that he did not understand Morits' explanation of his rights or the plain terms of the written waiver that he signed. He did not testify to this effect. In fact, defendant signed a written statement that explicitly provided otherwise.

¶ 33. The only reference to drugs in the motion to suppress was made in connection with defendant's assertion that the officer had induced him to speak, i.e., that his decision to waive was not voluntary. The trial court specifically rejected the notion that Morits had induced defendant to speak. This appears to have been the key issue before the court with respect to the validity of the waiver. As in *State v. Olson*, we find the court's discussion sufficient here, particularly given that defendant signed a written waiver attesting to his awareness of his rights and the consequences of waiving them. See 153 Vt. 226, 232, 571 A.2d 619,

623 (1989) (upholding trial court's determination that waiver was knowing, intelligent, and voluntary where court's findings focused on key issue being litigated, notwithstanding fact that no evidence was presented and no findings were made on all possible "totality of the circumstances" factors); see also *North Carolina v. Butler*, 441 U.S. 369, 373 (1979) (stating that "[a]n express written or oral statement of waiver of . . . the right to counsel is usually strong proof of the validity of that waiver"); and cf. *State v. Mumley*, 2009 VT 48, ¶¶ 15-16, 186 Vt. 52, 978 A.2d 6 (reversing suppression decision in case without signed written waiver where waiver itself was vague and defendant did not have opportunity to read full waiver form, and trial court reached its conclusion by stating that it "assumed" that defendant possessed requisite experience, education, background, and intelligence to understand nature of his rights and consequences of waiving them); see also *Olson*, 153 Vt. at 232, 571 A.2d at 623 (distinguishing *State v. Malinowski*, 148 Vt. 517, 536 A.2d 921 (1987), where Court reversed order granting motion to suppress due to inadequate findings, stating that the waiver at issue in *Malinowski* was "arguably vague, and defendant's understanding of the waiver was questionable"). None of the factors at issue in *Mumley* or *Malinowski* are present here. Defendant presented no evidence, or argument, to rebut the affirmative statements in his signed waiver and to show that he failed to understand his rights or the consequences of waiving them. The court did not err in crediting the State's evidence.

¶ 34. We note, moreover, that while defendant testified that he had just finished using six "Oxycontin 60s" when he was arrested, he stated that he was "awake" when the police officer was talking to him and "functional." His verbal exchanges with Morits illustrate this point as well, including his desire to make a deal after learning that one of his friends, who allegedly drove defendant to and from the pharmacy, had denied knowing him. Defendant also testified that he sought to make a deal to prevent his girlfriend from getting into trouble. See *State v. Haskins*, 178 S.E.2d 610, 615-16 (N.C. 1971) (holding that court did not err in failing to specifically address whether defendant was under influence of drugs at time of waiver where court's decision "implicitly carr[ied] the finding that [the defendant's] understanding and intelligence were not so adversely affected as to make him unconscious of the meaning of his words" and noting that any error would be harmless given that defendant's verbal exchanges with police

officers showed that he was in "full possession of his faculties and [had] a keen understanding of his predicament"). The record here supports the court's finding that defendant voluntarily, knowingly, and intelligently waived his rights.

*Affirmed.*