## STATE OF VERMONT
## SUPERIOR COURT — ENVIRONMENTAL DIVISION

|                                                    |   |                          |
|----------------------------------------------------|---|--------------------------|
| **In re 49 Tanglewood Final Plan Approval**        | } | Docket No. 76-6-12 Vtec  |
|                                                    | } |                          |

### Decision on Motion for Summary Judgment

This acrimonious dispute essentially revolves around one issue: whether a proposed subdivision requires a second separate connection to an existing street system. On May 10, 2012, the Town of Essex (Town) Planning Commission issued a final plan approval to Birchwood Land Company, Inc. (Applicant) to subdivide a 60-acre parcel into five lots at 49 Tanglewood Drive. A group of Town residents and property owners (Appellants), appearing pro se, appealed the approval pursuant to 24 V.S.A. § 4465(b)(4)[1] and now pose 19 questions for our review.[2] On May 20, 2012, Applicant, through its president and authorized agent, W. Owen Jenkins, Esq., filed a motion for summary judgment on all 19 questions. Several rounds of often repetitive responses and replies ensued, culminating in Applicant's Reply to Appellants' Response to Applicant's Reply to Appellants' Response to Applicant's Motion for Summary Judgment, filed Jan. 1, 2013.[3]

---

[1] This provision allows groups of ten or more voters or real property owners in the relevant municipality to appear as interested persons in a municipal land use appeal to allege that the requested relief, if granted, would not be in accord with the policies, purposes, or terms of the municipal plan or bylaws. 24 V.S.A. § 4465(b)(4). The group must make its allegations in a signed petition and designate a representative. Id. Sharon Zukowski of 41 Tanglewood Drive, Essex Junction, VT is the group representative.

[2] Appellants originally posed 55 questions. (Appellants' Statement of Questions, filed Jun. 29, 2012.) After a July 9, 2012 pretrial conference, Applicants reduced the number of questions to 19. (Appellants' Revised Statement of Questions, filed Jul. 30, 2012.). On July 12, 2012 (after the pretrial conference but before the filing of the revised questions), Applicant filed a motion to dismiss certain questions from the original, longer Statement of Questions. Since Applicant did not revise its motion after Appellants shortened their list of questions, this Court addressed Applicant's motion to dismiss insofar as it pertained to the remaining 19 questions in the Revised Statement of Questions. See In re 49 Tanglewood Drive Final Plan Approval, No. 76-6-12 Vtec (Vt. Super. Ct. Envtl. Div. Sept. 18, 2012) (Walsh, J.).

[3] Regrettably, neither the Vermont Rules of Environmental Court Procedure nor the Vermont Rules of Civil Procedure impose page or word limits for motion practice, such as those enforced in federal district courts in Vermont. Here, the parties' multiple and often repetitive rounds of responses and replies generated a total of 118 pages of filings, non-inclusive of statements of undisputed facts, exhibits, affidavits, and other material. While parties are bound only by the V.R.C.P. and not by the federal district court local rules, this Court notes that both sides' voluminous, tortured approach to motion practice directly contravenes the purpose of motions for summary judgment: to conserve limited and valuable resources of both the judiciary and the parties.

## Factual Background

To put the pending motion into context, the Court recites the following facts, which it understands to be undisputed unless otherwise noted:

1.     Applicant owns approximately 60 acres (the Property) in the Town of Essex, within the Medium Density Residential Zoning District (R2 District).

2.     Applicant proposes to subdivide the Property into four residential sites and one 45-acre parcel for donation to the Town.  There will be no further development of the donated land.

3.     The Property is located at the ends of two dead-end roads in the Birchwood Manor development:  Tanglewood Drive and Rosewood Trail.  Both roads have "hammerhead" ends.

4.     The Birchwood Manor development already contains at least 150 dwelling units, and the only way in and out is by Tanglewood Drive, which intersects with Sand Hill Road.

5.     Applicant proposes no new road to connect to public streets, but does propose to convert the "hammerhead" ends of Tanglewood Drive and Rosewood Trail into cul-de-sacs.

6.     The Town's Police Chief, Fire Chief, Director of Public Works, and Community Development Director indicated that the proposed development presents no safety, emergency access, or traffic concerns.

7.     In 2005, this Court approved a settlement agreement that resulted in Applicant securing a separate 9-lot subdivision within the Birchwood Manor development (since completed) with a waiver of a provision in the Town of Essex Subdivision Regulations requiring a second street access.

## Discussion

Here, we consider Applicant's motion for summary judgment on the 19 questions posed in Appellants' Statement of Questions.  We may only grant a summary judgment request when a moving party (here, Applicant) has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2).  We must "accept as true the [factual] allegations made in opposition to the motion for summary judgment" and give the non-moving party (here, Appellants) the benefit of all reasonable doubts and inferences.  Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356; see V.R.C.P. 56(c).  However, both the party claiming that a material fact is undisputed and the party seeking to establish a dispute of material fact must support their factual assertions with citations to admissible evidence.  V.R.C.P. 56(c)(1).  See Reporter's Notes—2012 Amendment, V.R.C.P. 56 ("Rules 56(c)(1)(B) and (c)(2) clarify that all asserted facts must be based on

2

admissible evidence"). Applicant erroneously asserts that a party's failure to respond to the other side's assertions of facts compels this Court to consider those facts admitted for summary judgment purposes. While this was true under the old version of V.R.C.P. 56, today's Rule 56(e) altered the former "deemed admitted" proviso. Under the new rule, effective January 3, 2012, courts <u>may</u> choose to consider a fact undisputed, but are not bound to do so. See also Reporter's Notes—2012 Amendment, V.R.C.P. 56(e)(2).

## I.      Subdivision Regulations at Issue.

It is Applicant's burden to prove that its proposal complies with applicable regulations. See <u>In re Miller Conditional Use Appl.</u>, No. 59-3-07 Vtec, slip op. at 16 (Vt. Envtl. Ct. Nov. 5, 2007) (Durkin, J.) ("[W]here there is no expression in a municipal ordinance to the contrary, an applicant carries the burden of proof to show that their proposed project conforms with the Regulations"). Article 4 of the Town of Essex Subdivision Regulations (Subdivision Regulations) provides certain standards applicable to all subdivisions. These include a provision that states, "To ensure adequate access, any subdivision or combination of proposed and previously approved or built subdivisions containing fifty (50) or more dwelling units shall include a street system that has two separate permanent connections to the existing street system."[4] Subdivision Regulations § 4.1(D). Thus, the plain language of this provision articulates the provision's purpose: "to ensure adequate access."

Parties do not dispute that the combination of Applicant's proposed subdivision and the previously built Birchwood Manor development contains fifty or more dwelling units served by only one permanent connection to the Town's street system. Rather, the parties dispute whether this Court should waive the second connector requirement. The Subdivisions Regulations contain the following waiver provision:

> Where the Planning Commission [or this Court, in its place[5]] finds that extraordinary and unnecessary hardships[6] may result from strict compliance with these Regulations, or where there are special circumstances of a particular subdivision, it may make the minimum modifications to the Regulations

---

[4] Subdivision Regulations § 4.1(D) continues on to provide that such connections shall be open to public motorized vehicular traffic and shall be proposed as Town streets for acceptance by the Town, but that— subject to certain approvals and consultations—one of the two connectors may be for emergency and pedestrian access only.

[5] This Court is vested in *de novo* appeals with all the power and authority of the municipal panel that first heard the application. 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g); <u>In re Torres</u>, 154 Vt. 233, 235 (1990).

[6] Applicants explicitly state that they do not argue hardship as grounds for a waiver (Applicant's Mot. for Summ. J. at 10, file Nov. 1, 2012), thus we do not address the hardship component of the provision.

necessary to afford relief without nullifying or adversely affecting the intent and purpose of the Town Plan or the Zoning Regulations.

Subdivision Regulations § 2.1. This statement is followed by four subparts, lettered A–D. Subpart A, upon which Applicant's arguments rests, states:

> Where the Planning Commission [or this Court, in its place] finds that, due to special circumstances of a particular subdivision, the provision of certain required improvements is not requisite in the interest of public health, safety, and general welfare, <u>or</u> that connecting facilities are not adjacent or in proximity to the proposed subdivision, it may waive such requirements, subject to appropriate conditions.[7]

Subdivision Regulations § 2.1(A) (emphasis added). Applicant argues that special circumstances exist that make the second access way unnecessary to protect public safety and, in the alternative, that connecting facilities are not adjacent or in proximity to the proposed subdivision. Neighbors contend that the term "special circumstances" is too vague to be enforceable; that this Court's August 10, 2005 order related to Applicant's previous 9-lot subdivision demonstrates the need for a second access for the development now proposed; and, in the alternative, that no waiver is warranted in this case.

## II.     The term "special circumstances."

Appellants argue that the term "special circumstances" is too vague to enforce. The term, however, does not stand alone. Rather, the Planning Commission may waive <u>required improvements</u> only where special circumstances make the provision of those improvements "not requisite in the interest of public health, safety, and general welfare." Subdivision Regulations § 2.1(A). Furthermore, when granting a waiver, the decision making body must make the minimum modifications to the Regulations necessary to afford relief without nullifying or adversely affecting the intent and purpose of the Town Plan or the Zoning Regulations and must require such conditions as will substantially secure the objectives of the requirement waived. See Subdivision Regulations §§ 2.1 & 2.1(C). With these qualifications on the term, we do not find that it is standardless, fails to provide adequate guidance, or leads to unbridled discrimination by the decision-making bodies charged with its interpretation. See In re Appeal of JAM Golf, LLC, 2008 VT 110, ¶¶13-14, 185 Vt. 201. To the contrary, determining whether an improvement is requisite in the interest of public health, safety, and general welfare

---

[7] Subpart C further states that "[i]n granting waivers, the Planning Commission [or this Court in its place] shall require such conditions as will, in its judgment, secure substantially the objectives of the requirements so waived." Subdivision Regulations § 2.1(C).

is readily done by referring to published materials that provide health and safety standards or by consulting officials responsible for ensuring public health and safety. Such publications and opinions are not dispositive, nor do they take the place of a municipal board or court as decision-maker. They do, however, provide landowners with enough guidance to interpret the Subdivision Regulation's reference to special circumstances that mitigate safety concerns that otherwise might require particular improvements. We distinguish this regulation, which applies specifically to required improvements, from the similar but far broader grant of police power zoning authority that the Vermont Supreme Court rejected in Town of Westford v. Kilburn, 131 Vt. 120 (1973).

### III. This Court's August 10, 2005 order.

In connection with Applicant's prior 9-lot subdivision, the Town Planning Commission issued Final Plan Approval #PC 2005-14, dated April 28, 2005. (See Appellants' Exhibit 2, filed Dec. 3, 2012.) Finding D of that approval contained an extensive discussion of the second access way provision and its potential applicability to future development. Id. at 2–7. Furthermore, Stipulation 7 of that approval required that any future applicant for development of Applicant's remaining lands include a Master Plan addressing the issue of a second full vehicular access. Id. at 16.

However, the approval for the 9-lot subdivision was ultimately governed by this Court's August 10, 2005 entry order, based on a stipulation entered into by Applicant, the Town, Bruce S. Post, Mary E. Post, Mostafa Daoudi, Philip Matcovich, Sharon Zukowski, Glenn W. Turner, and Virginia A. Turner. See Birchwood Land Co., Inc. Final Plan Approval, Nos. 98-5-05 Vtec & 174-10-04 Vtec (Vt. Envtl. Ct. Aug. 10, 2005) (Durkin, J.).[8] That order incorporated "provisions consistent with Final Plan Approval #PC 2005-14, dated April 28, 20, as amended per attached." Id. at 2 (emphasis added). The attached amended version significantly altered the extensive discussion in the original version's Finding D, replacing it with one paragraph granting a waiver of the second access way provision for the 9-lot subdivision, without any mention of future development. Id. at 6. Furthermore, the amended version retained the requirement that any future application for development of Applicant's remaining lands include a Master Plan, but abandoned the language requiring the plan to address the issue of a second full vehicular access. Id. at 13. We see no other language in our August 10, 2005

_____

[8] Bruce S. Post, Mary E. Post, Philip Matcovich, and Sharon Zukowski are part of the appellant group in the instant matter as well.

decision requiring a second access for future development. While the unamended version of the Planning Commission's April 28, 2005 approval is a public document that Appellants may use as a persuasive authority, it has no binding effect.

**IV.** **Whether a waiver of the second access way is warranted in this case.**

Within its sprawling motion for summary judgment,[9] Applicant argues that the following factors constitute "special circumstances" showing that the provision of a second access road is not requisite in the interest of public health, safety, and general welfare:

1. The paved width of Tanglewood Drive from Sand Hill Road to its intersection with Cindy Lane (an interior road within the subdivision) averages 40 feet, which is 10 feet wider than Town Public Work Specifications for Type 1 Urban Streets and 16 feet wider than requirements for Type II Paved Urban Roads.

2. Applicant proposes to build four residential lots, with the remaining 44.7-acre parcel to be donated to the Town for inclusion in its park system, remaining undeveloped.

3. The addition of the proposed residential lots to the over 150 homes in the Birchwood Manor Subdivision is comparatively minimal.

4. Public safety officials are satisfied that the Project as proposed will not present problems of inadequate access.

In support of these factual allegations, Applicant provides affidavits from the following Town officers and employees: Fire Chief Charles J. Cole; Chief of Police Bradley Jay LaRose; Dennis Lutz, Director of Public Works; and Dana Hanley, Community Development Director. (See Affs. attached to Applicant's Mot. for Summ. J., filed Nov. 1, 2012.) Applicant further argues that even if this Court finds the second access to be necessary to public welfare, Applicant deserves a waiver because connecting facilities are not adjacent or in proximity to the proposed subdivision. Specifically, it argues that the only possible location for a second access, either one fully open to vehicular traffic or one limited to pedestrian and emergency vehicle use, is across land consisting of several ravines as deep as 90 feet with slopes as great as 54%. In support of this factual allegation, it offers the affidavits referenced above, as well as several maps.

Appellants do not offer any evidence suggesting that the donated land will not remain undeveloped. Nor do they dispute the width of the road or the topographical challenges to building a second access. They offer no affidavits or other evidence from public safety personnel presenting concerns. They do not dispute the content or credibility of the affidavits offered by Applicant's safety and development experts; instead they call these affidavits

---

[9] Applicant raises myriad facts not material to this appeal as well as arguments that are not relevant. This opinion addresses only relevant facts and arguments.

"irrelevant," because, they argue, the threshold for requiring a second access is 50 houses and does not depend on road width. (Appellants' Resp. in Opp'n to Applicant's Mot. for Summ. J. at 20, filed Dec. 3, 2012.) Rather, Appellants' arguments stem from history; they argue that the Planning Commission has required a second access for other subdivisions in the past and that Birchwood Manor has been previously identified by various sources as a subdivision that could benefit from a second access way.

Under V.R.C.P. 56(e)(2), we find it appropriate for the purposes of this motion to consider undisputed Applicant's factual assertions regarding the width of the road, the topography of the area, and the donation of the 44.7-acre parcel to the Town for inclusion in its park system. Similarly, we consider it undisputed that the Town's Fire Chief, Chief of Police, Director of Public Works, and Community Development Director believe that the Project as proposed ensures adequate access to the Birchwood Manor development.

We agree with Appellants that the threshold for triggering the second access way requirement is fifty dwelling units under the plain language of Subdivision Regulations § 4.1(D), and we understand that, in the past, various individuals and Town entities have expressed concerns about access to large subdivisions generally and to the Birchwood Manor development in particular. Our task in this appeal, however, is to examine the propriety of a <u>waiver</u> of the second access provision <u>in this particular instance</u>. Specifically, we are to determine whether, due to special facts and circumstances particular to the Birchwood Manor development and the 4-lot subdivision under consideration, the second access provision may be waived because an additional access way is not requisite in the interest of public health, safety, and general welfare. See Subdivision Regulations § 2.1(A).

Again, we agree with Appellants that the Town's Fire Chief, Chief of Police, Director of Public Works, and Community Development Director cannot sit in the place of the Planning Commission or of this Court. It is entirely proper, however, for us to consider their testimony in reaching our own legal conclusion as to whether a second access way is requisite in the interest of public health, safety, and general welfare and therefore whether a waiver is appropriate. The undisputed facts on the record before us reveal that the majority of Tanglewood Drive averages 40 feet in width, that only four residential lots are proposed, and that no further development of the donated fifth parcel will occur, as this parcel will become part of the Town's public parks system. Key safety and development officials in the Town have affirmed that they have no safety concerns as to this particular proposal based on the width of

the road and the donation of the fifth parcel to the Town to remain undeveloped. Based on these undisputed facts, we determine as a matter of law that Applicant has met its burden of showing that a waiver is appropriate, because the provision of a second access way in this instance is not requisite in the interest of public health, safety, and general welfare. Subdivision Regulations § 2.1(A).

Further, we are satisfied that a waiver of the second access provision represents a minimum modification to the Regulations necessary to afford relief without nullifying or adversely affecting the intent and purpose of the Town Plan or the Zoning Regulations. The stated purpose of Subdivision Regulations § 4.1(D) is "to ensure adequate access" and in this case, adequate access is ensured. We examine not only the plain language of a zoning ordinance, but also "the whole of the ordinance . . . in order to try to give effect to every part," and will adopt an "interpretation that implements the legislative purpose." In re Nott, 174 Vt. 552, 553 (2002) (mem.). "The primary purpose of zoning is to bring about the orderly physical development of a community." In re Casella Waste Mgmt., Inc., 2003 VT 49, ¶ 17, 175 Vt. 335. As such, it is essential that we construe a zoning ordinance and related municipal plans to determine and give effect to the intent of the drafters. "The legislative intent is most truly derived from a consideration of not only the particular statutory language, but from the entire enactment, its reason, purpose and consequences." Delta Psi Fraternity v. City of Burlington, 2008 VT 129, ¶ 7, 185 Vt. 129 (quotation omitted). We have examined the Subdivision Regulations and the Town of Essex 2011 Town Plan and see no outright prohibitions on the granting of a waiver for a second access way under special circumstances.

The Subdivision Regulations require us, in granting a waiver, to impose such conditions as will, in our judgment, "secure substantially the objectives of the requirements so waived." Subdivision Regulations § 2.1(C). We therefore impose the condition, already present in the Applicant's submitted plans, that there will be no further development of the donated land without a reexamination of the need for an additional access way.

## V. Appellants' Questions 18 and 19.

Our analysis above disposes of the majority of the questions in Appellants' Statement of Questions. Appellants' Question 18 asks whether the Subdivision Regulations limit dead-end streets to a length of 900 feet, citing to Table 4.1. Even if the Subdivisions do impose this limitation, Applicant does not propose to create a new dead end road or add to the length of any dead end road. Appellants claim that Applicant will be adding to the length of the road,

8

but they provide no support for this statement, and Applicant's plans only indicate a conversion of the hammerhead ends into cul-de-sacs. We do not regard the plain language of Table 4.1 as prohibiting the conversion of the hammerhead ends of Tanglewood Drive and Rosewood Trail into cul-de-sacs.

Appellants' Question 19 asks whether this Court's order formalizing the 2005 stipulation for Applicant's 9-lot subdivision requires Applicant to now submit a Master Plan for approval. We answer this question in the affirmative, with some qualification. As explained in Section III of this decision, this Court incorporated an amended version of the Town Planning Commission's original April 28, 2005 approval of the 9-lot subdivision. Although the original version required a Master Plan setting out a second access, the amended version that this Court incorporated based on the stipulated settlement required only a Master Plan, without requiring the plan to address the issue of a second full vehicular access. Thus Applicants were required to submit a Master Plan, but that plan did not need to include a second access. Subdivision Regulations § 2.7 sets out the purpose and elements of a Master Plan. Here, we determine that Applicant's submissions in support of its application meet the administrative requirements for a Master Plan as laid out in Subdivision Regulations § 2.7, which sets out the purpose and elements of a Master Plan.

In accordance with the analysis set out above, the Court **GRANTS** Applicant's motion for summary judgment, concluding this appeal. We impose the condition that no development occur on the donated parcel without a reexamination of the need for an additional access way. This concludes the current proceedings before this Court, and a Judgment Order accompanies this Decision.

Done at Berlin, Vermont this 22nd day of April, 2013.

Thomas G. Walsh, Environmental Judge

9